143 N.J. Super. 182 (1976)
362 A.2d 1228
DENNIS J. JONES, MARLENE FEDER AND MARCUS L. FEDER, CITIZENS AND TAXPAYERS OF EAST WINDSOR, MERCER COUNTY, NEW JERSEY, AND STANLEY C. VAN NESS, PUBLIC ADVOCATE OF NEW JERSEY, PLAINTIFFS,
v.
EAST WINDSOR REGIONAL BOARD OF EDUCATION AND ITS MEMBERS; RICHARD C. FRIEDMAN, INDIVIDUALLY AND AS A MEMBER OF SAID BOARD, AND LYNN B. FRIEDMAN, INDIVIDUALLY AND AS FORMER PRESIDENT OF SAID BOARD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 29, 1976.
*184 Mr. Arthur Penn and Mr. Peter A. Buchsbaum, attorneys for plaintiffs.
Messrs. Turp, Coates, Essl & Driggers (by Mr. Henry G.P. Coates), attorneys for defendant East Windsor Regional Board of Education.
Messrs. Ridolfi & Friedman (by Mr. Robert N. Ridolfi), attorneys for defendants Friedman.
SCHOCH, A.J.S.C.
This case comes before me on cross motions for summary judgment. The matter is ready for summary judgment because, in the court's opinion, there is no issue of any material fact which requires any plenary hearing.
The facts, as the court gleans them from the pleadings filed and the affidavit and the transcript of the proceedings on March 7, 1976, are these:
Defendant East Windsor Regional Board of Education is an elected regional school board composed of six members from East Windsor Township and three from Hightstown. Prior to March 2, 1976 one of the East Windsor representatives, Mr. Hellquist, had resigned, but his resignation had come too late to have his seat filled at the school board election held on March 2 and which involved two East Windsor seats and one from Hightstown.
In that election Mr. Abrams, a member of the school board, was reelected. Another member from East Windsor, Mrs. Friedman, who had been and was at that time the *185 President of the school board, was defeated and Mr. Miller elected in her place. The Hightstown representative, Dr. Martinelli, did not seek reelection and Mr. Sarafin was elected.
Prior to the election Mrs. Friedman had arranged through the local newspapers to carry notices asking any person who was inteested in filling the Hellquist vacancy to submit resumes to her in care of the secretary of the board by March 4. Twenty-six people applied for the vacancy.
On the evening of March 4 Mrs. Friedman called for a special meeting of the school board to be held on March 7 for the purpose of voting to fill the vacant seat of Hellquist. The next afternoon Mr. Kent, the secretary of the board, delivered a notice of this proposed meeting, which notice included the agenda to be followed, to the editor of the Hightstown Gazette, the Windsor Heights Herald and the Trenton Evening Times, and, in addition, to the clerks of the two municipalities involved and to each of the then members of the school board. Neither the Windsor Heights Herald nor the Hightstown Gazette published a newspaper between Friday and Sunday, March 5 to March 7; each is a weekly, and consequently neither paper carried the notice. The Trenton Times published the notice on March 7.
At 7:45 P.M. on March 7 the special meeting was convened at the East Windsor Regional School Administration Building in Hightstown. At that time there was a discussion among the members of the school board as to whether the meeting complied with the requirements of the so-called Sunshine Law, L. 1975, c. 231, approved on October 21, 1975, and which took effect 90 days thereafter. Consequently, it was in force at the time of this meeting.
Three of the eight members present expressed their opinion that the meeting was illegal because it did not meet the requirements of the act. They refused to participate. Thereafter there was some discussion among the other five members as to how the interview with the 26 applicants would be handled. It was decided that each applicant would be *186 allotted five minutes and asked two questions: (1) "What expertise do you feel you have to contribute to the board?" and (2) "How would you handle the present situation?" This referred to the dispute about the legality of the meeting. It was further decided that the interviews would be held in executive or closed session. The board then adjourned its open meeting and conducted the 26 interviews.
Some four hours later the board reconvened and thereafter nominations were made, based first with reference to a numbered list rather than by name. There were five persons nominated. There was no discussion by any board member with respect to either the qualifications of the person nominated or the reason for the nomination being made. It was further agreed that the first nominee to receive five affirmative votes would be the person to be seated to fill the vacancy.
Richard Friedman was the fourth nominee. Votes were taken on the first three and none of these persons received five affirmative votes. When it came time for voting on Friedman, six members other than Mrs. Friedman voted. There were four affirmative and two negative.
At that point the suggestion was made from somewhere  the record isn't clear; it simply states "A voice", and whether that was a member of the school board or one of the local citizens in attendance it is impossible to tell. In any event, the suggestion was made that Mrs. Friedman would be in a conflict of interest if she voted on behalf of seating her husband. Regardless of that suggestion or criticism, Mrs. Friedman did vote affirmatively and Richard Friedman therefore received five votes. After the meeting had adjourned he was sworn in as a member of the board.
As stated, all parties have moved for summary judgment: defendants for dismissal of the complaint and plaintiffs for judgment in accordance with the relief requested in the complaint. I. e., a declaration that the election of Friedman be vacated and declared null and void and that the action of the board in making him a member of the school board was improper and should be revoked.
*187 Six issues are raised by the pleadings and the briefs that have been filed. The first, raised by the attorney for the defendant regional board of education, is that the board is improperly joined; that the board is reconstituted each year; that the present board, which will be seated from 1976-77, is not properly a party because the action under review was taken by the regional board which was in office for 1975-76.
There is no question that the statutes which relate to regional school boards direct that there be a reconstitution of the school board each year following the school board election for that particular region. However, the court rejects the suggestion that therefore no action can legitimately and properly be taken against the present school board because it wasn't the one that took the action which is in dispute. The court considers that the statutory requirement for election of president and other officers each year after a school board election is purely administrative. The regional board of education continues as a viable body, and I find that there is no basis for the contention that this regional board is not properly before the court.
The second issue raised by defendants is that plaintiffs have failed to exhaust their administrative remedies, defendants suggesting that if there is an issue of conflict of interest on the part of Mrs. Friedman, such issue should properly be brought by administrative proceedings before the Commissioner of Education and the State Board of Education.
The court does not disagree with the suggestion that the Commissioner of Education would have the authority to hear any complaints made against Mrs. Friedman with respect to the claim of conflict of interest. However, that concession does not require the conclusion that this is the only path plaintiffs can follow.
The law is clear that the exhaustion of remedies requirement can be waived where the interest of justice requires. The latest pronouncement the court is aware of *188 with respect to that principle is found in Brunetti v. New Milford, 68 N.J. 576 (1975) where the Supreme Court, through Justice Pashman, said:
* * * the exhaustion requirement will be waived where "the interest of justice so requires." (Citations omitted). This has been held to mean that exhaustion of remedies will not be required where administrative review will be futile, where there is a need for prompt decision in the public interest, where the issues do not involve administrative expertise or discretion and only a question of law is involved and where irreparable harm will otherwise result from denial of immediate judicial relief. (at 589)
The court finds that two of those four criteria are present in this case, namely, that there is a need for prompt decision in the public interest and the issues do not involve administrative expertise but involve only a question of law.
With respect to the first finding the court considers that it is in the public interest for a decision to be made promptly with respect to Friedman. The court is aware that administrative remedies, while sometimes more expeditiously handled than matters in the courts, nevertheless take a considerable length of time. This would mean that Friedman would remain on the school board during the time that the matter was pending before the Commissioner and the State Board of Education. The court feels it is in the public interest to have this matter resolved expeditiously so that any action by the regional school board would not be subject to criticism or litigation because of Friedman's continued presence on the board, should the court find he was not entitled to remain.
Secondly, the court considers that the issue of conflict of interest on the part of Mrs. Friedman does not require any administrative expertise. There is no dispute about the facts. At the time she cast her vote she was president of the school board; she was, if I may use the expression, a "lame duck" member, the citizens of the municipalities having voiced their opinion that she should no longer serve. The person she voted for was her spouse. I do not find *189 that it requires any administrative expertise to decide whether this placed Mrs. Friedman in the position of conflict of interest. Consequently, defendants' contention that this action is improper because administrative remedies have not been exhausted is rejected.
The next three issues raised revolve about the interpretation of the Sunshine Law. Plaintiffs contend that the meeting in question violated this law in three respects: (1) the notice requirement was violated; (2) the action of the board in holding the interviews in executive session violated the act, and (3) the failure of any member of the board to engage in any public discussion about the action the board was taking or took violates the act.
In considering the allegation that the notice requirement of chapter 231 was violated, the court must refer to § 2 of the act which sets forth in considerable detail what the Legislature had considered in passing this legislation and the reasons it passed this Open Public Meetings Act.
One of the findings of the Legislature was that the public has the right to be present at all meetings of public bodies and to witness in full detail all phases of their deliberations, policy formulations and decision-making, and that that right is vital to the enhancement and proper functioning of the democratic process.
§ 3(d) defines the term "adequate notice" and sets forth that the written advance notice of at least 48 hours be given in three ways. The notice is to be (1) prominently posted in at least one public place reserved for such announcements; (2) delivered in some fashion, either by mail, telephone, telegram or hand delivery to at least two newspapers which have the greatest likelihood of informing the public of such meetings; and (3) filed with the clerk of the municipalities involved. The court finds that the secretary of the board met those three provisions of § 3(d).
The problem arises as to the effectiveness of filing notices with a newspaper that will not publish the notice of the meeting until after it is over. The Trenton Times, according *190 to the factual stipulation, published the notice prior to the meeting  the same day, but nevertheless prior. That hardly meets the requirement of two newspapers, plus the fact, it seems to the court, that when the Legislature says at least 48 hours notice that means the notice should be published 48 hours before the meeting  not delivered to some area of publication 48 hours before the meeting. Clearly, there was some notice in the municipalities to at least some of the citizens; at least 26 of them (the applicants for the vacancy) knew the meeting was going to be held, along with the school board members and their friends or enemies. The fact that some of the citizens might have learned of this meeting by word of mouth hardly meets the requirement § 3(d) of the Open Public Meeting Act.
The Court's attention is directed to a clause in § 10(a) which reads:
Provided further that any action for which advance published notice of at least 48 hours is provided as required by law shall not be voidable solely for failure to conform with any notice required in this act.
It is suggested this means that even if the notice provision were not met, that alone would not make the action of the public body voidable. I do not agree with that interpretation. It seems to the court that § 10(a) refers to situations where proper notice has been given at least 48 hours before the announced meeting and may not have contained the entire agenda or any agenda at all, but simply a notice of the meeting.
It seems to the court that § 10(a) was intended to cover situations where exception is taken to an action of a public body because of some typographical error in the notice or because of some additional action taken beyond that stated in the agenda or any number of like situations, and not to mean that failure of proper notice does not, in effect, mean anything.
*191 It is a well established principle of law that it is assumed that the Legislature knows what it is doing and does not legislate a nullity. That, in effect, would be what this interpretation would result in if improper notice is given or if the notice requirement is not adhered to. In short, there would be no need for § 10(a).
There is a suggestion in the pleadings that the purpose of the notice requirement is simply to alert the press so they can, if they wish, send representatives to the meeting and thereafter report to the public the actions taken by the particular public body. That suggestion ignores completely the initial statement in § 2 of the right of the public to be present at all meetings of public bodies. Elsewhere in the act the Legislature refers to the public and the press. It is therefore, clear to the court that when the Legislature speaks of the right of the public to be present, that is exactly what they meant  the public and not the press.
Consequently, the court finds that the meeting of March 7 was in violation of the notice requirements of L. 1975, c. 231.
The court is aware that this is a matter of first impression in New Jersey, at least as far as I know, that it is quite possible that further litigation may result. Therefore, the other issues raised by the parties will be considered and ruled upon so that there will be a final adjudication at this level of all issues.
Plaintiffs contend that the action of the board in meeting in executive session violated the Open Public Meetings Act. Defendants say this action was justified because personnel and personnel matters were under discussion or might be under discussion, and therefore the individual privacy of the applicants might be invaded; and furthermore, § 7 (b) (8) of the act states that a public body may exclude the public from that portion of a meeting where the public body discusses any matter involving the appointment of a public officer, with certain exceptions not applicable here.
*192 On the face of the record it would appear that the interviews did not relate to any particular fact situation that would invade the individual privacy of the applicants. As I say, that is only on the face of it, because beyond the two questions (decided in open session) that each applicant would be asked the court assumes that the resume submitted by each of the applicants was available for review by the individual members of the board. Consequently, the question of individual privacy could have arisen during one or another or all of these interviews.
Accordingly, the court does not find from the evidence before it that in this factual circumstance the school board violated the Open Public Meetings Act in deciding to meet in executive session when interviewing the various applicants.
Finally, with respect to the act plaintiffs contend that it was violated because there was no public discussion by any member with respect to the matter before the board. The transcript of the statements made at the meeting corroborates that allegation. However, that does not dispose of the issue.
Again referring to § 2, the Legislature declared that it was the right of the public to witness in full detail all phases of the deliberation, policy formulation and decision-making of public bodies. It seems to the court that in this particular instance the public  those members who were present  witnessed the deliberations of the school board to the extent that it acted.
There is nothing before this court from which it could even be inferred that discussions took place in closed session regarding the qualifications of the various applicants, or that any decision with respect to any one or another of the applicants was discussed and/or made in closed session.
The court does not find from the act itself any requirement on the part of the public body to engage in public discussion. The requirement is that the public has the right to witness whatever discussion or lack of discussion the school board is involved in and thereafter decide for themselves by their *193 franchise whether they want to keep people in office who do not discuss issues of public interest but merely decide them without discussion.
I do not consider the case referred to by plaintiffs, Cullum v. Board of Education, 15 N.J. 285 (1954), to be on point. In that case there is no question that at a prior meeting, or at least at a prior discussion, a majority of the school board met and made up their minds who the appointee would be, and they even had a resolution prepared before the meeting started. I do not find the factual situation in that case would be apposite to this one. Consequently, I do not find in the present factual situation any violation by the school board in allegedly failing to discuss publicly.
Finally, we come to the issue of the action of Mrs. Friedman in voting for her husband. It should be clearly stated for the record that I do not suggest that Mrs. Friedman did not have the right at that time to vote on any applicant, subject to any conflict of interest. She did have that right, but the question is whether she should have exercised that right in this particular familial situation.
I have been referred to the statement made in Hochberg v. Freehold, 40 N.J. Super. 276, at p. 284 (App. Div. 1956). "Of course, a personal interest in the welfare of the community is not an interest of a disqualifying sort." Based on that it is suggested that Mrs. Friedman's action was proper; that she was evincing and demonstrating her personal interest in the welfare of the community.
The further argument is made that there is no indication of any sort in the factual situation before the court that Mrs. Friedman did or would benefit in any way, economically or financially, by her action in voting for her husband. Plaintiffs concede that there is no such inference; indeed, there is no such allegation.
Defendants then go on to suggest that since there is no economic benefit to Mrs. Friedman, there can be and was no conflict of interest. I disagree.
*194 In Visotcky v. Garfield City Council, 113 N.J. Super. 263 (App. Div. 1971), appears language this court considers particularly apropos to this situation.
The members of the board of education of a municipality are public officers holding positions of public trust. They stand in a fiduciary relationship to the people whom they have been appointed or elected to serve. (at 266)
"Fiduciary relationship" necessarily requires not only actions of propriety but having the appearance of propriety. How can it be proper or even appear to be proper for a person who has been rejected by the citizens of the municipalities to vote for her husband? In this court's opinion, the question answers itself.
Freehold Tp. Comm. v. Gelber, 26 N.J. Super. 388 (App. Div. 1953) involved a situation where a member of the township committee voted for the granting of a liquor license to his brother. The court said:
The briefs debate whether there existed in this case a disqualifying interest beyond consanguinity. We think it unnecessary to explore that question since the undisputed blood interest here present is dispositive. It is the rule both of common law and by statute that the relationship of brothers disqualifies a judge, and a lesser standard cannot here be applied. (at 392)
Concededly, the relationship of which the court spoke was a blood and not marital relationship. I think this is a difference without distinction.
S and L Associates, Inc. v. Washington Tp., 61 N.J. Super. 312 (App. Div. 1960), has language which the court considers applicable to this situation:
A public officer has the duty of serving the public with undivided loyalty, uninfluenced in his official actions by any private interest or motive whatsoever. (citations omitted)
(T)he interest which disqualified an officer may be indirect rather than direct or pecuniary, and the question is whether the officer, by reason of a personal interest, is placed in a situation of temptation to serve his own purposes, to the prejudice of those for whom the *195 law authorizes him to act. The validity of his action does not rest upon proof of fraud, dishonesty, loss to the municipality, or whether he was in fact influenced by his personal interest. (at 329)
Here Mrs. Friedman was in a position where the court finds the only proper action for her to have taken with respect to the nomination of her husband was to have abstained.
Consequently, for the reasons I have just outlined judgment is entered in favor of plaintiffs on both points, directing that the seat presently occupied by Richard Friedman be declared vacant and his election null and void. The action taken by that regional board of education is reversed.