208 N.J. Super. 468 (1986)
506 A.2d 359
TOWNSHIP OF LAFAYETTE, A MUNICIPAL CORPORATION IN THE COUNTY OF SUSSEX; JOHN NAFZIGER, INDIVIDUALLY AND AS MAYOR AND A MEMBER OF THE TOWNSHIP COMMITTEE; JOHN KAVANAGH, INDIVIDUALLY AND AS A MEMBER OF THE TOWNSHIP COMMITTEE; JAMES WHITMAN, INDIVIDUALLY AND AS A MEMBER OF THE TOWNSHIP COMMITTEE; ROBERT STRUBLE, INDIVIDUALLY AND AS A MEMBER OF THE TOWNSHIP COMMITTEE; AND THE BOARD OF HEALTH OF THE TOWNSHIP OF LAFAYETTE, PLAINTIFFS-RESPONDENTS,
v.
THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF SUSSEX; EDMUND J. ZUKOWSKI, INDIVIDUALLY AND AS CHAIRMAN OF THE BOARD; JAMES J. CAMPBELL, INDIVIDUALLY AND AS A FREEHOLDER; AND JOSEPH KESLO, JR., INDIVIDUALLY AND AS A FREEHOLDER, DEFENDANTS-APPELLANTS, AND NORTHWEST JERSEY DEVELOPMENT CO., INC.; SUSSEX COUNTY RESOURCE RECOVERY, INC.; LAFAYETTE DEVELOPMENT COMPANY; AND H.S.L., INC., INTERVENOR-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1986.
Decided February 11, 1986.
*470 Before Judges SHEBELL, MUIR and MATTHEWS.
Gage Andretta argued the cause for appellants (Wolff & Samson, attorneys; Gage Andretta, Dennis M. Toft and Thomas J. Carroll on the brief).
Michael Gordon argued the cause for plaintiffs-respondents (Gordon and Gordon, attorneys; Michael Gordon and Timothy S. Haley on the brief).
Ross A. Lewin, Deputy Attorney General, argued the cause for Department of Environmental Protection (W. Cary Edwards, Attorney General, attorney; Deborah T. Poritz, Deputy Attorney General, of counsel; Ross A. Lewin on the brief).
No appearance on behalf of intervenor-respondents.
The opinion of the court was delivered by MUIR, J.S.C. (temporarily assigned).
*471 Defendants, Sussex County Board of Freeholders, collectively and individually, appeal from a summary judgment of the Chancery Division invalidating the selection of a solid waste disposal site and a contract to make that site a County-owned/privately-operated sanitary landfill. The Chancery Judge held the appearance of conflict of interest on the part of County Counsel who advised and represented the defendants during all aspects of the site selection and all events leading to approval of the contract by the defendants, required voiding of both transactions. He also held the failure to submit the contract to public bidding was violative of the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. and the Local Lands and Buildings Law, N.J.S.A.: 40A:12-1 et seq.
In October 1978, the defendant, with Donald Kovach as County Counsel, initiated a program to adopt a Sussex County Solid Waste Management Plan as required by N.J.S.A. 13:1E-1 et seq. The ultimate goal was to establish a solid waste disposal site in the County.
A hired consultant selected and ranked 91 potential sanitary landfill sites. One of those sites, Site 40, the subject of this litigation, was under option to corporations in the control of Ambrose Hamm.
Hamm was and is, with his wife, the single largest stockholder (a little more than ten percent of the outstanding stock) of the Sussex County State Bank. Kovach, a four percent stockholder of the bank, was and is the bank's President and Chairman of its Board of Directors. Further, Kovach's law firm handled almost all of the bank's legal work.
The consultant reduced the number of sites for in-depth analysis to four. Site 40, initially ranked 38th, was not included.
The selection process continued into 1985, when the DEP brought an action to close Hamm's Sanitary Landfill (HSL), the *472 County's major sanitary landfill site. As the result of the DEP action, Hamm proposed the County select Site 40, which was contiguous to HSL.
Subsequent negotiations and meetings led to Site 40 becoming the only site considered after modification of the County Solid Waste Management Plan which the DEP approved in March 1984.
Just prior to DEP approval, in February 1984, the County began negotiations with Hamm to acquire title to Site 40. By that time, two Hamm-owned and controlled corporations, Northwest Development Co., Inc. and Lafayette Development Co., were the record owners of the site.
The negotiations led to the challenged contract which the defendants approved at a public meeting in June 1984.
Structured as a purchase-lease back arrangement, a Hamm corporation, Sussex County Resource Recovery, Inc., agreed to design and construct a sanitary landfill on Site 40. If Resource Recovery accomplished the design and construction, the defendants, for Sussex County, agreed to purchase the lands at a price of $6,525 per acre, subject to a mortgage "in an amount representing the construction proceeds necessary to complete the initial solid waste landfill improvements." (Defendants proposed to provide the necessary funding through issuance of bonds pursuant to N.J.S.A. 40:66A-43). After acquisition, the County would lease the land for 50 years to Resource Recovery which would then operate it subject to Public Utility Commission regulation.
Resource was to pay a rental based on "the amount paid by the County to purchase the land." The agreement also provided for the County to reimburse Hamm's corporations for all legal, accounting and engineering services incurred "for developing and promoting the site for sanitary landfill." Consequently, the County agreed to pay all raw land acquisition costs, promotion costs, design costs, construction costs and other costs incurred by the Hamm-controlled corporations.

*473 I.
We are called upon to determine whether County Counsel, who advised the Board of Freeholders on all legal aspects of the Board's decisions to select the landfill site and to enter into the purchase-lease back agreement, had a disqualifying interest that was sufficient to invalidate the Board's decisions. We conclude that he did and therefore affirm the Chancery Division judgment.
The decision as to whether a particular interest is sufficient to disqualify is a necessarily factual one and depends on the circumstances of the particular case. Van Itallie v. Franklin Lakes, 28 N.J. 258, 268 (1958). No definitive test can be devised. Ibid.
The question is whether there exists an interest creating a potential for conflict and not whether the official yielded to the temptation of it. Aldom v. Roseland, 42 N.J. Super. 495, 502 (App.Div. 1956). The potential for psychological influences cannot be ignored. Griggs v. Princeton, 33 N.J. 207, 220 (1960). Consequently, it is the mere existence of the interest, not its actual effect, which requires the official action to be invalidated. Ibid.
In the instant case, we are dealing with a public official, an attorney who holds public office. Schear v. Elizabeth, 41 N.J. 321, 326 (1964). Accordingly, because the office calls for the services of an attorney in areas where the public interest is involved, the possible areas of conflict of interest are subject to even closer scrutiny and more stringent limitation. In re Professional Ethics Opinion 452, 87 N.J. 45, 50 (1981); Schear v. Elizabeth, supra, 41 N.J. at 328.
Judge Stein, in his oral opinion, relying on the foregoing, reasoned:
[W]hen a site moves from 40th position to the top of four as the result of negotiations, whatever the ultimate motives were for that  and there is an opinion [of County Counsel] which holds that, the particular transaction which is described [the purchase-lease back agreement] is not subject to the Local *474 Public Contracts Law and not subject to the Local Lands and Buildings Law and when there are critical opinions which have to be given over the site selection process by counsel and the manner in which hearings are to be conducted in order to satisfy the terms and conditions of the Solid Waste Management Act, I think the public interest or I hope the public interest requires somebody who is totally disinterested in the outcome, advice from somebody who is not only totally disinterested in the outcome, but whose relationship with others gives the appearance of total disinterest with the outcome. [TIVA-86].
Defendants challenge that reasoning. They argue the interest is too remote. They further contend the law lends no support to invalidation of official action where the appearance of conflict involves a non-voting public official.
We conclude, given the special relationship between county counsel and the Board of Freeholders, that the interest was of sufficient magnitude and proximity to invalidate both the site selection and the purchase-lease back agreement.
Because we are dealing with a public official in an attorney-client relationship with a public governing body, one totally dependent upon that public official for legal advice and direction, more significant limitations must be imposed on the nature of potential conflicts or the appearance of potential conflicts. What might be considered too speculative or remote when dealing with a public official who is not an attorney transforms into a disqualifying interest when the public official is an attorney. This is mandated not only by the need for a high ethical standard on the part of lawyers but by the nature of the capacity in which they serve.
An attorney advising a public body wields considerable power and influence by virtue of his ability and opportunity to interpret the law and advise on legal matters.
The force of his influence is subtle and pervasive. A reasonably-minded citizen has to conclude there was a disqualifying interest when the advice of County Counsel leads to a significant business opportunity for an individual with whom he had a business relationship to the extent of the one that existed here.
A disqualifying interest need not be direct. That there is the potential for temptation and psychological influence, *475 regardless of whether it occurred, is sufficient under the facts here when combined with the lawyer-client relationship to vitiate the site selection and the purchase-lease back agreement.

II.
As to the remaining grounds for invalidating the purchase-lease back agreement, the failure to put out for public bid the landfill construction and leasing of the constructed landfill site, we affirm for the reasons set forth in Judge Stein's oral opinion of December 3, 1984.
In doing so, we note the major goal of the bidding statutes is to secure for the public the benefit of an unfettered competiton. Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410 (1975). At the heart of this goal is the need to foster public faith and confidence in the awarding of public contracts. Avoidance of that goal, no matter how well intended, can do nothing but undermine the public confidence.

III.
We find it unnecessary to address the issues of mootness argued.
Affirmed.