230 N.J. Super. 195 (1989)
553 A.2d 62
HELEN BARRETT, LEON ANDORS, DIANE DROBINSKI, CHARLES EM, JOHN FRAIN, BARBARA HAMBERGER, HELEN HAPPEL, PATTI L. HOFF, MARTIN A. KILLMORGAN, HERMAN LAZARUS, III, STEPHEN LAZORCHAK, MILDRED C. LINK, IRENE LOBELL, ROBERT LOBELL, JANE MANZIONE, JOSEPHINE MITCHELL, FRANK PACIFICO, SHIRLEY PACIFICO, DANIEL STICCO, DORIS STICCO, ELLEN WILSON AND WILLIAM WILSON, PLAINTIFFS-RESPONDENTS,
v.
UNION TOWNSHIP COMMITTEE AND UNION TOWNSHIP PLANNING BOARD, DEFENDANTS-APPELLANTS, AND DAVID HOFSTETTER AND JOANNE L. HOFSTETTER, HIS WIFE, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 10, 1989.
Decided February 3, 1989.
*196 Before Judges MICHELS, LONG and KEEFE.
J. Peter Jost argued the cause for defendant-appellant Union Township Committee.
Raymond S. Papperman argued the cause for defendant-appellant Union Township Planning Board (Vaida & Vaida, attorneys; David Vaida, of counsel and on the brief).
Daniel S. Bernstein argued the cause for intervenors-appellants David Hofstetter and Joanne L. Hofstetter, his wife (Bernstein, Hoffman & Clark, attorneys; Daniel S. Bernstein and Suzanne T. Bogad, of counsel and on the brief).
Avrom J. Gold argued the cause for plaintiffs-respondents (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Avrom J. Gold, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
The pivotal issue posed by these consolidated appeals is whether Councilman John Strube, a member of the defendant Union Township Committee (Township Committee) was in a position of conflict of interest when he voted for an amendment *197 to the Union Township Zoning Ordinance that permitted the construction of a continuing care community on property adjacent to the Stone Arch Health Care Center (Stone Arch), a nursing home owned by intervenor David Hofstetter, and in which Strube's mother was a patient. Judge Griffin in the Law Division held that Strube was in a position of conflict, disqualified him, and declared certain amendments to the Township Land Use Code to be invalid. The Township Committee, defendant Union Township Planning Board (Planning Board) and intervenors Hofstetter appeal.
A brief recitation of the facts giving rise to this appeal are helpful to understand the decision we reach. In 1984, the Planning Board adopted a municipal master plan which, in part, recommended that a certain area of the municipality be preserved for agricultural use. On January 5, 1985, David Hofstetter, the owner and operator of Stone Arch, filed an application with the Planning Board for a site plan approval for a continuing care community to be built on a lot adjacent to the nursing home. The lot that David Hofstetter wanted to build upon is owned by him and his wife, Joanne L. Hofstetter, and is located in the area that the Planning Board recommended be preserved for agricultural use. At the time of this application, however, the Hofstetters' lot was in an R-2 zone. This zoning classification did not specifically permit continuing care communities, but it did permit "clinics, rest homes, convalescent homes and nursing homes." A 1982 Board of Adjustment opinion indicated that continuing care communities came within the broad definition of permitted uses in this zone.
The Hofstetters' application for site plan approval was dismissed by the Planning Board on August 29, 1985, because the lot had less than the required frontage. The Planning Board concluded that the Hofstetters would have to obtain a use variance from the Board of Adjustment before approval could be granted. The Hofstetters applied for such a variance and hearings were held on the matter until January 1986, when the hearings were adjourned.
*198 In 1985, the Township Committee adopted a land use code which conformed with the recommendations of the 1984 master plan issued by the Planning Board. Among other things, the new land use code established an agricultural preservation (AP) district, within which the permitted land uses were single-family detached, single-family detached cluster and performance subdivisions. The new classification allowed for nursing homes as a conditional use, but did not allow for clinics, rest homes, convalescent homes or continuing care facilities, all of which were permitted under the earlier R-2 zone classification.
On January 16, 1986, however, the Planning Board issued a memorandum to the Township Committee which recommended that the AP district "nursing home" conditional use be amended to include "similar or congregate continuing care facilities in conjunction with nursing homes." On April 2, 1986, the Township Committee introduced an ordinance that (1) added the term "continuing care facility" to the new code; (2) rezoned the Hofstetters' lot and 13 other lots into a Country Residential (CR) district from their earlier inclusion in the AP district; (3) made continuing care facility a use by right in a CR district; (4) deleted nursing home as a use from all districts except the CR district; (5) redefined "housing for the elderly" to differentiate it clearly from continuing care facilities and nursing homes, and (6) established criteria for continuing care facilities.
The amending ordinance was tabled by the Township Committee pending reference to the Planning Board. On May 29, 1986, a public hearing was held before the Planning Board. The seven regular members and two alternate members of the board were all in attendance. During the hearing, it was proposed that the Township's master plan be amended to conform to the provisions of the proposed amended land use ordinance. A vote on the proposal resulted in a 3-3 split with the seventh member of the board, the mayor, abstaining. The first alternate also abstained, but the second alternate voted in the affirmative. A resolution to this effect was adopted on June 11, 1986.
*199 Thereafter, on June 28, 1986, the Township Committee held a public hearing on the proposed amended land use ordinance. At this time the proposed ordinance was considered as two separate ordinances; one dealing with the creation of the CR district and the other dealing essentially with continuing care facilities. The ordinances were passed on a 2-1 vote, with Councilmen Frank Keary and Strube voting in the affirmative.
On August 11, 1986, plaintiffs, who are real estate owners, taxpayers and residents of the Township, instituted this action by a complaint in lieu of a prerogative writ against the Township Committee and the Planning Board. The complaint claimed generally that (1) the Planning Board's vote to amend the township's master plan was invalid due to certain procedural deficiencies in the voting process, and (2) the Township Committee's adoption of two ordinance amendments was arbitrary and capricious; was designed to improperly authorize building that previously would have required a variance, and constituted "spot zoning" contrary to statute and the New Jersey Constitution.
After the Hofstetters were permitted to intervene, plaintiffs served notices to take depositions of the Hofstetters, Township Committemen Keary and Strube, four members of the Municipal Planning Board and Municipal Planner John Madden, the individual who drafted the township's master plan and land use code. During the hearing on the motions by the Township Committee and Planning Board to quash the subpoenas, it was ascertained for the first time that Strube's mother had been a resident at Stone Arch. Depositions established that Strube had been a member of the Township Committee since 1986. Prior to that time he was a member of the Planning Board from 1981 to 1985. While on the Planning Board, he participated in the discussions that led to the adoption of the master plan and he was also involved in the hearings on the Hofstetters' application for site plan approval. While on the Township Committee, Strube voted in favor of the 1986 ordinances dealing with the CR district and continuing care facilities.
*200 The record shows that Strube's mother had resided at Stone Arch from 1982 until her death in 1987. Mrs. Strube was a medicaid patient and, therefore, neither she nor her son were responsible for the costs of her nursing home care. Further, Strube did not meet the Hofstetters until 1985, when Hofstetter applied to the Planning Board for site plan approval.
Thereafter, the Hofstetters moved for partial summary judgment with respect to Strube's alleged conflict of interest. The trial court, however, granted summary judgment in plaintiffs' favor, finding that Committeeman Strube's mother's residence in the Hofstetters' nursing home presented a conflict of interest. Accordingly, the trial court held that Strube was disqualified and the provisions of the ordinances that related to the conflict were invalidated. The Planning Board, the Township Committee and the Hofstetters appealed, contending generally that the trial court erred in concluding that Committeeman Strube was in a conflict of interest. We disagree and affirm.
It is fundamental that the public is entitled to have its representatives perform their duties free from any personal or pecuniary interests that might affect their judgment. Van Itallie v. Franklin Lakes, 28 N.J. 258, 265 (1958); La Rue v. East Brunswick, 68 N.J. Super. 435, 446 (App.Div. 1961); S & L Associates, Inc. v. Washington Twp., 61 N.J. Super. 312, 329 (App.Div. 1960), mod., 35 N.J. 224 (1961); Aldom v. Borough of Roseland, 42 N.J. Super. 495, 500-501 (App.Div. 1956). This is essential if the public is to have confidence and trust in the representatives who are required to decide public issues coming before them.
A public official is disqualified from exercising the authority of his office in any matter in which he has a personal or financial interest that conflicts with his public duty. Griggs v. Princeton Borough, 33 N.J. 207, 219-220 (1960); Sokolinski v. Woodbridge Tp. Municipal Council, 192 N.J. Super. 101, 103 (App.Div. 1983); McNamara v. Saddle River Borough, 64 N.J. *201 Super. 426, 429 (App.Div. 1960); Aldom, supra, 42 N.J. Super. at 501. "The personal or private interest which disqualifies may be identified generally as one which is different from that which the public officer holds in common with members of the public." Aldom, supra, 42 N.J. Super. at 507. See Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 282 (1965); Marlboro Manor, Inc. v. Montclair Tp., 187 N.J. Super. 359, 362 (App. Div. 1982).
The decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends upon the circumstances of the particular case. Van Itallie, supra, 28 N.J. at 268; Lafayette v. Board of Chosen Freeholders, 208 N.J. Super. 468, 473 (App.Div. 1986); Marlboro Manor, Inc., supra, 187 N.J. Super. at 361; S & L Associates, supra, 61 N.J. Super. at 330; Aldom, supra, 42 N.J. Super. at 503. "The question is whether there exists an interest creating a potential for conflict and not whether the official yielded to the temptation of it." Lafayette, supra, 208 N.J. Super. at 473. See Griggs, supra, 33 N.J. at 219; Van Itallie, supra, 28 N.J. at 268; Marlboro Manor, Inc., supra, 187 N.J. Super. at 362; La Rue, supra, 68 N.J. Super. at 447; Aldom, supra, 42 N.J. Super. at 502; Zell v. Borough of Roseland, 42 N.J. Super. 75, 82 (App.Div. 1956).
In determining whether a conflict exists, "[t]he potential for psychological influences cannot be ignored." Lafayette, supra, 208 N.J. Super. at 473. See Griggs, supra, 33 N.J. at 220; Marlboro Manor, Inc., supra, 187 N.J. Super. at 362; Aldom, supra, 42 N.J. Super. at 507. All interests, however, may not be said to possess the likely capacity to tempt the public official to depart from his sworn duty. A remote and speculative interest will not be held to disqualify the official. Van Itallie, supra, 28 N.J. at 269; Marlboro Manor, Inc., supra, 187 N.J. Super. at 361; La Rue, supra, 68 N.J. Super. at 447.
Thus, in Zell v. Borough of Roseland, we declared void a zoning amendment that would have benefitted a church because *202 a member of the planning board, who voted to approve the amendment, was a member of that church. In doing so, we discussed the broad language of N.J.S.A. 40:55-1.4 (later N.J.S.A. 40:55D-23):
The statutory disqualification is markedly broadly couched, extending to personal as well as financial interest, "directly or indirectly." There is thus evidenced an intent that the bar is not confined to instances of possible material gain but that it extends to any situation in which the personal interest of a board member in the "matter" before it, direct or indirect, may have the capacity to exert an influence on his action in the matter. This is the construction of the statute which accords with its obvious purpose of promoting impartiality in the performance by planning boards of their important public duties and is, therefore, that which we should adopt. See Meyers v. Mayor and Council of Borough of East Paterson, 21 N.J. 357, 360 (1956). [42 N.J. Super. at 81. (Emphasis added)].
Similarly, in Aldom v. Borough of Roseland, we declared void a zoning amendment because a councilman, who voted for the amendment, was employed by a corporation that would have benefitted by the amendment. In ruling that the councilman should have "refrain[ed] from joining in the deliberative action of the governing body," we explained:
The interest which disqualifies is not necessarily a direct pecuniary one, nor is the amount of such an interest of paramount importance. It may be indirect; it is such an interest as is covered by the moral rule: no man can serve two masters whose interests conflict. Basically the question is whether the officer, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes to the prejudice of those for whom the law authorizes him to act as a public official. And in the determination of the issue, too much refinement should not be engaged in by the courts in an effort to uphold the municipal action on the ground that his interest is so little or so indirect. Such an approach gives recognition to the moral philosophy that next in importance to the duty of the officer to render a righteous judgment is that of doing it in such a manner as will beget no suspicion of the pureness and integrity of his action. [42 N.J. Super. at 502 (citations omitted). (Emphasis added)].
The reasoning of both Zell and Aldom was adopted by our Supreme Court in Griggs v. Princeton Borough, 33 N.J. 207 (1960). There, the Supreme Court invalidated a town council resolution because two members of the council were professors at the university that stood to benefit from the resolution. The Court stated:

*203 In the instant case, it is true that the prime interests of Councilmen-Professors Lester and Sorenson in the University are in its academic affairs. But the same long standing association which gives these men security in their positions could tend to bind their loyalties to the University in such a manner that they would be interested in all matters affecting the institution. Cf. Zell v. Borough of Roseland, supra, where a member of a planning board voted on a matter affecting a church of which he was but a member, causing the appellate court to invalidate the planning board's action. The potential of psychological influences cannot be ignored. Cf. Aldom v. Borough of Roseland, supra, 42 N.J. Super., at p. 507. We do not hold that these matters had an effect in the instant case. Nevertheless, we perceive the rule to be that the mere existence of a conflict, and not its actual effect, requires the official action to be invalidated. Aldom v. Borough of Roseland, supra, 42 N.J. Super., at p. 502. [33 N.J. at 220 (Emphasis added)].
Finally, in Marlboro Manor, Inc. v. Montclair Tp., 187 N.J. Super. 359 (App.Div. 1982), we applied the Griggs analysis and vacated a resolution of the township council which denied a place-to-place transfer of a liquor license because two members of the council were members of a church that vociferously opposed the transfer and the religious affiliation of the officials was not disclosed at the time of the vote. We initially noted that our decision was not meant to "impugn the motives of the two members of the council who, while members of the protesting church, participated without disclosure of their personal interest." Marlboro Manor, Inc., supra, 187 N.J. Super. at 362. We then stated that "the principles applicable to conflict of interest must be applied with an even hand where a potential for a division of loyalties exists." Id. We reasoned as follows:

A personal interest or relationship that has reasonable prospect of influence upon the decisional process should, at the very least, be disclosed. Such disclosure secures to the applicant the right, prior to the exercise of the discretion vested in a council member, to timely challenge the composition of the hearing body. Cf. Fanwood v. Rocco, supra 33 N.J. [404] at 417 [(1960)]. Here, the two council members held interests different from that which they held in common with members of the public. They were confronted with a protest voiced by their spiritual mentor that the location of the liquor license in proximity to the church will have serious adverse effect upon church interests. In these circumstances there can be no doubt that a question of the prospect of divided loyalties between their personal interest and their obligation of official civic duty existed. In such circumstances rectitude compelled disclosure and the public interest required disqualification. Only by such action can the *204 exercise of the discretionary power of government, like Caesar's wish for his wife, "be not so much as suspected." [at 362-363. (Emphasis added)].
See also Sokolinski v. Woodbridge Tp. Municipal Council, 192 N.J. Super. 101, 105 (App.Div. 1983) (where we held that certain members of the board of adjustment had a conflict of interest and were disqualified from hearing variance applications for property owned by the board of education because they were employed by or married to individuals employed by the board of education).
Here, the interest which conflicts with Councilman Strube's duty to act impartially on the ordinances before him arises from the fact that his mother was a resident of Stone Arch from 1982 until her death in 1987. Councilman Strube's interest was neither remote nor speculative. It would strain credulity to conclude that Councilman Strube did not have an interest in seeing that his invalid mother was properly cared for in the facility that was owned and operated by the Hofstetters. The fact that this was not a direct personal or financial interest is not dispositive of the issue. The question is whether there existed an interest creating a potential conflict and not whether Councilman Strube yielded to the temptation of it. Griggs, supra, 33 N.J. at 219; Van Itallie, supra, 28 N.J. at 268; Lafayette, supra, 208 N.J. Super. at 473; Marlboro Manor, Inc., supra, 187 N.J. Super. at 361; La Rue, supra, 68 N.J. Super. at 447; Aldom, supra, 42 N.J. Super. at 502; Zell, supra, 42 N.J. Super. at 82.
Furthermore, the circumstance of Councilman Strube's mother's residence in the Hofstetters' nursing home was not one that he held "in common with members of the public." Aldom, supra, 42 N.J. Super. at 507. See Kramer, supra, 45 N.J. at 282; Marlboro Manor, Inc., supra, 187 N.J. Super. at 362. While we do not mean to impugn the integrity of Councilman Strube and while it is far from certain that Councilman Strube was in any way influenced by a consideration of the effect that his vote could have on the care his mother was receiving at Stone Arch, this situation presented a potential for psychological influence that *205 cannot be ignored. Griggs, supra, 33 N.J. at 220; Lafayette, supra, 208 N.J. Super. at 473; Marlboro Manor, Inc., supra, 187 N.J. Super. at 362; Aldom, supra, 42 N.J. Super. at 507. A perceived conflict of interest is as harmful to the public's confidence in its representatives as the actual existence of such conflict.
Finally, although it is acknowledged that determinations of municipal officials are not to be "approached with a general feeling of suspicion," Van Itallie, supra, 28 N.J. at 269, it is plain that Councilman Strube's failure to disclose the fact of his mother's residence in the Hofstetters' nursing home could lead "reasonably-minded citizen[s] ... to conclude there was a disqualifying interest...." Lafayette, supra, 208 N.J. Super. at 474. See Marlboro Manor, Inc., supra, 187 N.J. Super. at 362-363.
Accordingly, the trial court properly held that Councilman Strube was disqualified from voting on the amendatory zoning ordinance here involved.
AFFIRMED.