295 N.J. Super. 67 (1996)
684 A.2d 921
GUNTHER JOCK AND SHERRY OBERG-JOCK, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
SHIRE REALTY, INC., ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WALL AND THE TOWNSHIP OF WALL, DEFENDANT-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 6, 1995.
Decided August 14, 1996.
*68 Before Judges SKILLMAN, PAUL G. LEVY and EICHEN.
Walter R. Bliss, Jr., argued the cause for appellants (Mr. Bliss and James F. Schwerin, on the brief).
Thomas J. Hirsch argued the cause for respondent, Zoning Board of Adjustment of Wall Township (Mr. Hirsch, on the brief).
Charles E. Starkey argued the cause for co-respondent, Shire Realty, Inc. (Starkey, Kelly, Blaney & White, attorneys; join in the brief of respondent).
The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
When a public official pursues private business in the community, the potential for conflict of interest is ever present. An impermissible conflict of interest results if the official exploits his or her position for business gain. We are concerned here with whether a member of a Zoning Board of Adjustment may testify as an expert witness in support of an application for certain "hardship" variances on behalf of a corporation of which he was the controlling stockholder.[1]
Plaintiffs' residence in Wall Township is contiguous to one of two adjoining undersized lots whose development potential is the subject of our examination on this appeal. The Zoning Board of *69 Adjustment ("Board") granted bulk variances permitting construction of a house on the adjacent undersized lot.
In July 1992, plaintiffs filed an action in lieu of prerogative writs challenging the validity of the Board's action. Much later they moved for summary judgment, claiming: (1) the applicant had a conflict of interest and exerted undue influence on the Board; (2) title to the undersized lot had merged with an adjoining undersized lot as a matter of law, and this deprived the Board of subject matter jurisdiction; and (3) any hardship was self-created by the applicant. The trial judge reserved judgment and permitted discovery on the merger issues. When discovery was completed, the judge ordered a single trial as to all issues. Trial was held on June 22, 1994, based on the record before the Board and the depositions concerning title to the properties. No testimony was offered, and after hearing argument from the parties, the trial judge issued a written opinion determining there was no conflict of interest, no merger of title and the variances were properly granted. Since the opinion did not respond in detail to plaintiffs' numerous substantive and procedural challenges to the grant of the variances, they moved for reconsideration of those issues, arguing that all such issues had been briefed but not considered by the trial judge. The judge denied the motion for reconsideration. We treat the resulting order as a final disposition dismissing all claims raised by plaintiffs.
In this appeal plaintiffs contend the trial judge erred because: (1) the Board's decision was "tainted by the appearance of conflict of interest and undue influence"; (2) the Board lacked jurisdiction because title to the two lots merged by operation of law, so conveyance of a part of the combined lot required a subdivision and a variance; (3) the applicant was precluded from establishing hardship based on the substandard status of its lot because any such hardship was self-created; and (4) the evidence in the record does not support the Board's decision granting the variances. We reverse the Law Division order as well as the variances granted by the Board.
*70 The record before the Board reveals that plaintiffs live on Lot 28, adjacent to Lot 27 (a vacant lot); on the other side of Lot 27 is Lot 26 (a single-family house and lot). Lots 26 and 27 conformed to the requirements of the first Wall Township zoning ordinance adopted in 1951, but amendments in 1955 made them substantially undersized and therefore nonconforming. The minimum lot area became 30,000 square feet, the minimum mean lot width 150 feet and the minimum frontage 100 feet. Lot 27 did not conform because it contained less than 20,000 square feet, was only 75 feet wide and had only 75 feet of frontage.[2]
In 1957 J. Clarence Allen and his wife purchased the house and land at 1610 Bass Point Road (Lot 26) from Thomas and Hope Mason. They knew that property was smaller than permitted by the local zoning ordinance, as were most of the lots in the area. The lots on either side of theirs were owned by Donald and Nancy Sherman. The Allens negotiated with the Shermans for the acquisition of Lot 27 (a wooded lot approximately seventy-five feet by three hundred feet) plus an additional twenty-foot wide strip from Lot 25 to be added to the other side of Lot 26. In 1959 the Planning Board granted the joint Sherman-Allen application of Sherman and Allen to resubdivide Lots 25, 26 and 27. In January 1960, the Shermans conveyed the twenty-foot strip to the Allens and conveyed Lot 27 to their son Robert Allen.[3] Lot 26 remained undersized, being only 95 feet wide.
In July 1989, Mr. Allen listed the two lots for sale with a real estate agency, asking $749,900 for Lot 26 and $450,000 for Lot 27. The listing agreement provided that "the sale of the vacant lot must follow the sale of the residence at 1610 Bass Point Road." In April 1991, Paul Amato, as president of Shire Realty, Inc., *71 offered to buy the two lots for $650,000 "subject to all necessary government approvals." Although Mr. Allen did not agree to that offer, six months later he agreed to sell both lots to Amato, without contingencies, for $500,000. The contract of sale provided, in pertinent part, that Lot 26 was to be sold for $400,000 and Lot 27 for $100,000 to Paul Amato, subject to his right to assign either to another entity he controlled and further subject to his personal guarantee on purchase money mortgages. Lot 27 was not represented as a buildable lot, but Amato was authorized to apply for a variance before taking title (although the sale was not contingent upon the success of that application).
It is clear that Amato knew in January 1992, when he took title to Lot 27 in Shire, that the successful development and marketing of Lot 27 would require variance relief from the Board of Adjustment of which he was a member. In due course, Shire filed an application for several bulk variances. When the matter was called before the Board, Shire's attorney presented the application. Earlier, Amato had been on the dais with the other members of the Board, and when this application was called for consideration, he simply stepped off and was sworn in as a witness. Amato was the sole witness called and he was qualified as an "expert in the field of real estate brokering." He testified about the range of house and lot sizes in the area, listing the dimensional deficiencies of many lots as to area, width, frontage and having structures within fifty feet from the top of the river-bank  the four specific bulk variances Shire requested. There was no objection raised to his participation in the presentation of the application.
Amato offered his opinion that without a variance, Lot 27 would be zoned into "non-utility," and that granting a variance would "outweigh any detriment to the zoning ordinance and the Master Plan" by providing "access to the river to provide another fine housing location for a couple or individual or family to live in." Additionally, it would be in keeping with the neighborhood and increase the value of the neighborhood. He testified that the *72 general area around the lots in question had a diverse range of lot and home sizes and styles and his proposed new residence would not be unusual. He also offered his opinion that twenty-five other lots in the area had dimensional deficiencies under the current zoning ordinance, half of which pre-existed the current regulations. He also opined that granting the variance would not cause substantial detriment to the public good or substantially impair the intent and purpose of the zone plan or zoning ordinance.
The Board found that Lot 27 "was a legally created lot and met all zoning requirements at one time and therefore the need for the variance is not a self-created hardship but one created by the changes that have occurred in the Zoning Ordinance." It found further that "there is no land available which the Applicant can purchase to increase the size of the lot," and "the contiguous property owners are not interested in purchasing the lot in question." The Board's decision was that Shire "established a hardship and the lot in question is an isolated undersized lot," and the four bulk variances were granted.
Later, in the Law Division, in a written opinion, the trial judge considered "whether Amato's appearance, itself, considering his relationship with the Board, should invalidate the Board action." The judge discussed Lafayette v. Bd. Chosen Freeholders, 208 N.J. Super. 468, 506 A.2d 359 (App.Div. 1986), Wyzykowski v. Rizas, 132 N.J. 509, 626 A.2d 406 (1993) and Place v. Bd. Adj., 42 N.J. 324, 200 A.2d 601 (1964), three cases dealing with conflict of interest under common law principles. But the judge based her decision on the Local Government Ethics Law. Based solely on N.J.S.A. 40A:9-22.5(k), the judge held that "[a]lthough Amato's appearance was in connection with the business interests of the corporation, Shire Realty, Inc., there is no basis for saying he should have been prohibited from doing so." With that issue resolved, the judge determined there was sufficient evidence in the record before the Board to sustain its decision. The judge also decided there was no merger of title of the two lots when held by Allen family members.
*73 Our analysis of the propriety of Amato's participation in the application for bulk variances based on hardship, in light of his position as a Board member, is founded on an analysis of the Local Government Ethics Law in effect when the Shire application was presented to the Board. N.J.S.A. 40A:9-22.5(h) prohibits a local government officer or a business organization in which he has an interest from representing "any person ... other than the local government in connection with any cause, proceeding, application or other matter pending before any agency in the local government in which he serves." At the same time, N.J.S.A. 40A:9-22.5(k) permits a government officer to represent himself in "proceedings concerning his, or [his immediate family's], own interests." We do not, however, read N.J.S.A. 40A:9-22.5(k) to provide a general exemption to N.J.S.A. 40A:9-22.5(h): it does not expressly permit self-representation before the agency in which the government employee or officer also serves.
The legislative findings and declaration in N.J.S.A. 40A:9-22.2(c) lend support to this understanding, providing "[w]henever the public perceives a conflict between the private interests and the public duties of a government officer or employee [public] confidence [in the integrity of its elected and appointed representatives] is imperiled." Further, N.J.S.A. 40A:9-22.5(c) provides that "[n]o local government officer or employee shall use or attempt to use his official position to secure unwarranted privileges or advantages for himself or others." Because an application for a variance necessarily seeks permission to violate the dictates of the zoning ordinance, "a reasonably informed citizen could see [Amato] as seeking a favor or special treatment." Wyzykowski v. Rizas, 132 N.J. 509, 531, 626 A.2d 406 (1993). The Board had to decide between the testimony from Amato and the statements of the people opposed to the application in order to determine whether Shire had proved the hardship required for granting the variances it sought.
The trial judge, recognizing that Amato did not act as a Board member with respect to the Shire application, held that his *74 appearance itself, considering his relationship with the Board, did not invalidate the Board's action. Although citing Wyzykowski, as well as N.J.S.A. 40A:9-22.5(k), the judge did not make the required factual analysis of whether a particular interest suffices to disqualify the public official's action. Wyzykowski, supra, 132 N.J. at 523, 626 A.2d 406. It is undisputed that Amato and his wife were the sole shareholders of Shire and that he had complete control of the corporation, but no consideration was given to disregarding the corporate entity based on the alter ego doctrine. See Coppa v. Taxation Div. Director, 8 N.J. Tax 236, 245 (Tax 1986). Only brief attention was paid to this issue in the judge's opinion, which stated:
Although Amato's appearance was in connection with the business interests of the corporation, Shire Realty, Inc., there is no basis for saying he should have been prohibited from doing so.
We disagree and conclude that Amato's appearance as an expert witness, seeking to convince his fellow Board members to allow him to develop this property in violation of the zoning ordinance requirements, created at least the potential for conflict. That potential makes the grant of the variances invalid. See Tp. Lafayette v. Bd. of Freeholders of Sussex Cty., 208 N.J. Super. 468, 473, 506 A.2d 359 (App.Div. 1986). By testifying and offering his opinion of the eligibility of Lot 27 for the variances, Amato did much more than simply "submitting to the jurisdiction of the Board, as all other citizens of the community are required to do." Wyzykowski, supra 132 N.J. at 528, 626 A.2d 406.
He testified about facts to satisfy the positive criteria and gave opinions concerning the negative criteria, all of which was to be weighed by his fellow Board members as to credibility and overall persuasiveness. Certainly another witness could have presented the same information Amato testified to about the character of the area. To the extent that he was offering his expert opinion to his fellow Board members, his relationship with them could be seen as influencing their consideration of his proofs, especially since the determination of hardship is, to a significant degree, subjective rather than objective. In presenting his company's request, Amato *75 necessarily asked that his fellow Board members exercise their quasi-judicial discretion in his favor. This is inconsistent with the prohibition in the Local Government Ethics Law against representing a business organization, in which he has an interest, in connection with an application pending before the agency in which he serves. N.J.S.A. 40A:9-22.5(h).
The judgment of the Law Division in favor of the defendants is reversed and the variances granted to Shire are invalid. Accordingly, there is no need to consider plaintiffs' contentions that "merger of Lots 26 and 27 deprives the Board of subject matter jurisdiction, that merger imposed a self-created hardship on Amato and Shire and that there was insufficient proof before the Board to support the grant of a variance."
Reversed.
NOTES
[1] Since this board member did testify, we have no occasion to decide whether there would be a conflict of interest if he had not testified.
[2] Lot 26 contained a residence and was narrow and substantially undersized under the current zoning ordinance.
[3] Subsequently, Mr. Allen directed Robert to give his brother Raymond a half interest in Lot 27, as Mr. Allen intended to eventually leave all the property to them.