**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2240-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAS J. LOYD, a/k/a
RAS LLOYD and RAS
LYOD,

     Defendant-Appellant.

_____

Submitted October 25, 2021 – Decided January 6, 2022

Before Judges Messano, Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 18-07-0458.

Joseph E. Krakora, Public Defender, attorney for appellant (Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the briefs; Jarred S. Freeman, on the briefs).

Michael H. Roberson, Somerset County Prosecutor, attorney for respondent (Matthew Murphy, Amanda

Frankel and Lauren Bland, Assistant Prosecutors, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for amicus curiae Attorney General of New Jersey (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief.)

PER CURIAM

A Somerset County grand jury returned an indictment charging defendant Ras Loyd with third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1); second-degree burglary, N.J.S.A. 2C:18-2(a)(1); three counts of third-degree theft of a firearm, N.J.S.A. 2C:20-3(a); third-degree theft of property, N.J.S.A. 2C:20-3(a); third-degree theft of a motor vehicle, N.J.S.A. 2C:20-3(a); and second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2). All crimes, except the arson, allegedly occurred on January 24, 2018, in Watchung, Somerset County; the arson allegedly took place on the same date in Irvington, Essex County.

Although the victims of the burglary and thefts were listed in the indictment as "John and Jane Doe," they were in fact William Parenti, Chief of the North Plainfield Police Department, and his wife Eileen. The State alleged that defendant broke into the Parentis' home and stole property and firearms, as well as a 2006 Mercedes Benz. A doorbell camera at the home captured the burglar on video. Later that day, the Irvington Fire Department extinguished a

vehicle fire; the car was the stolen Mercedes. Weeks later, police in Warren Township were dispatched to a burglary in progress. They arrested defendant. The State alleged that defendant was the man seen in the video of the earlier burglary at the Parenti home.

Chief Parenti served as president of the New Jersey Association of Chiefs of Police and the county Chiefs of Police Association; he was a candidate for County Sheriff. His brother, Anthony J. Parenti, Jr. (Anthony[1]), has been an assistant prosecutor in the Somerset County Prosecutor's Office (SCPO) for approximately thirteen years, and prior to that was a member of the Summit Police Department.

Defendant moved to disqualify the SCPO from prosecuting the indictment based on the familial relationship, arguing it created an "appearance of impropriety." Defendant also moved to transfer venue for the prosecution to Essex County, contending that was the proper venue for the most serious crime in the indictment.

In addition to the above facts, the State's opposition to defendant's motion included affidavits from Anthony and Assistant Prosecutor Matthew Murphy.

---

[1] We sometimes refer to Anthony J. Parenti, Jr., by his first name only to avoid confusion. We intend no disrespect by this informality.

3

Murphy is legal supervisor to SCPO's "Burglary Task Force." He described the events leading to defendant's arrest, including applications he personally supervised and submitted for court-ordered cellular data. Murphy certified that no other assistant prosecutor in the SCPO was involved in the investigation, and Murphy did not "recall ever discussing" defendant's crimes with anyone other than task force detectives and his paralegal. Murphy said he never met Chief Parenti and never spoke with him except to provide an update on the case.

Murphy also stated his decision to avoid communication with Chief Parenti was consistent with his usual policy not to speak with crime victims to avoid any possible taint of future testimony and any attack on the "bona fides" of an indictment. Murphy said he "personally made the decision to 'wall-off'" Anthony from the investigation and prosecution of defendant, and Murphy asserted he would "remain solely responsible for all decisions regarding that criminal prosecution."

Anthony certified that Murphy asked him "if and how" he was related to Chief Parenti sometime in 2018, and Anthony said the chief was his brother. Murphy asked him again sometime in 2019, and Anthony reiterated the relationship. Anthony knew by then that Murphy had secured an indictment against defendant for the burglary. Anthony certified he was not involved at

any time with the investigation or indictment of defendant, and Murphy never discussed the incident or the indictment with him.

After considering oral argument, the judge denied both aspects of defendant's motion and entered a conforming order. We granted leave to appeal.

Before us, defendant contends:

> POINT I: THE TRIAL COURT ERRED BY DENYING MR. LOYD'S MOTION TO DISQUALIFY THE SOMERSET COUNTY PROSECUTOR'S OFFICE.
>
> > a. The Somerset County Prosecutor's Office Must be Disqualified Because There is an Appearance of Impropriety.
>
> POINT II. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MR. LOYD'S MOTION TO CHANGE VENUE.

The State urges us to affirm the judge's order and further argues that appropriate voir dire of prospective jurors will assure defendant a fair trial.

We invited the Office of the Public Defender (OPD) and the Attorney General (AG) to file amicus briefs, and the AG accepted our invitation. Subsequent to our amicus invitation, OPD substituted in as defendant's attorney and filed a supplemental brief. OPD echoes the arguments made by defendant; the AG those made by the State. The AG also adds that because county prosecutors are constitutional officers in the Executive Branch of the

A-2240-20

government, disqualifying the SCPO would violate the separation of powers doctrine. See N.J. Const. art. III, para. 1 ("The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others except as expressly provided in this Constitution.").

Having considered these arguments in light of the record and applicable legal principles, we affirm.

I.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010) (citing J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 222 (App. Div. 2006)); accord, State v. Faulcon, 462 N.J. Super. 250, 254 (App. Div. 2020); State v. Hudson, 443 N.J. Super. 276, 282 (App. Div. 2015). Following amendments to the Rules of Professional Conduct (RPC) in 2004, the Court abandoned the "appearance of impropriety" standard for evaluating whether an attorney faced a disqualifying conflict of interest. In re Sup. Ct. Advisory Comm. on Pro. Ethics Op. No. 697, 188 N.J. 549, 552 (2006).

6

Nevertheless, even after the Court amended the RPCs, it preserved the "appearance of impropriety" standard in some situations, including consideration of issues regarding the disqualification of judges. See, e.g., State v. McCabe, 201 N.J. 34, 43 (2010) (noting that Court Rules and the Code of Judicial Conduct "are designed to address actual conflicts and bias as well as the appearance of impropriety"). The Court has articulated the appearance of impropriety standard in those cases as "[w]ould a reasonable, fully informed person have doubts about the judge's impartiality." DeNike v. Cupo, 196 N.J. 502, 517 (2008).

In Kane Properties, LLC v. City of Hoboken, an attorney who represented an objector before the municipal zoning board, subsequently became municipal attorney and rendered advice to the city council that was considering the objector's appeal from the zoning board's approval. 214 N.J. 199, 208–11 (2013). The Court held that "when an 'office calls for the service of an attorney in areas where the public interest is involved, the possible areas of conflict of interest are subject to even closer scrutiny and more stringent limitation.'" Id. at 221 (quoting Twp. of Lafayette v. Bd. of Chosen Freeholders, 208 N.J. Super. 468, 473 (App. Div. 1986)). Noting the "governing body['s] . . . performance of a quasi-judicial act," the Court concluded that "[a]pplying the appearance of

impropriety standard in this dispute, as with applying it to judicial functions, is essential to maintaining public confidence in the integrity of the proceedings." Id. at 222–23 (citing DeNike, 196 N.J. at 522) (emphasis added).

Defendant argues that prosecutors similarly are not bound solely by the RPCs, and, as a result, the SCPO should be disqualified under the broader "appearance of impropriety" standard. While we agree that "prosecutors are guided and governed by the Rules of Professional Conduct and our case law to ensure fairness in the process," In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 144 (2005) (emphasis added), defendant has not cited any case, nor has our research revealed any published decision, that applied the appearance of impropriety standard in circumstances similar to this case. Having said that, however, we reassert the point made in Faulcon, that although "[t]he prohibition against the appearance of impropriety for attorneys is no longer a valid consideration . . . , the prohibition against impairing the fair administration of justice remains strong." 462 N.J. Super. at 256 (citation omitted).

Defendant has not articulated precisely why the SCPO's prosecution of this appeal would challenge public confidence in the integrity of the proceedings. Our courts have predicated disqualifications based on the broader

"appearance of impropriety" standard only when there was some personal connection between the judge or attorney, and the subject of, or a party to, the proceedings. See, e.g., Kane, 214 N.J. at 208–11; McCabe, 201 N.J. at 46 (municipal court judge was required to recuse himself when he and defense counsel were adversaries in an unrelated, unresolved matter); State v. Holland, 449 N.J. Super. 427, 443 (App. Div. 2017) (reversing the defendant's conviction because the trial judge previously represented the defendant); State v. Kettles, 345 N.J. Super. 466, 467 (App. Div. 2001) (reversing the defendant's conviction because the trial judge, while formerly an assistant prosecutor, presented a case against the defendant to a grand jury and obtained an indictment).

We contrast these cases with State v. McNamara, where we rejected the defendant's argument that he was entitled to a new trial because the judge had served as the First Assistant Prosecutor when the indictment was returned. 212 N.J. Super. 102, 108 (App. Div. 1986). We concluded that recusal was not required because the judge had not personally been involved in prosecuting the defendant. Ibid.

Defendant specifically acknowledged before the motion judge that he was not alleging any impropriety by the SCPO, nor did he contest that Anthony was "walled-off" from the case and not involved with its investigation or

prosecution. Defendant has not explained why it is likely that prospective jurors necessarily would know that Chief Parenti was related to anyone who worked in the SCPO. Given the undisputed facts, defendant failed to establish that a potential disqualifying interest personal to Anthony should be imputed to the entire SCPO, requiring its disqualification. Our courts have refused to do so in other circumstances.

In State v. Harvey, the judge who presided over the defendant's second capital murder trial and conviction, Glenn Berman, resigned to become the county prosecutor while the appeal was pending. 176 N.J. 522, 524 (2003). After the defendant's conviction and sentence were affirmed and anticipating the filing of a post-conviction relief (PCR) petition, the AG superseded[2] the prosecutor's office to avoid an appearance of impropriety and appointed two deputy attorneys general (DAG) to represent the State. Ibid. Among other claims in his PCR petition, the defendant asserted that the prosecutor's office "destroyed physical evidence" and violated its discovery obligations. Id. at 525.

---

[2] Pursuant to N.J.S.A. 52:17B-107(a)(1)(a), "[w]henever in the opinion of the Attorney General the interests of the State will be furthered by so doing, the Attorney General may . . . supersede a county prosecutor in any investigation, criminal action or proceeding."

Thereafter, the AG named the county's deputy first assistant prosecutor, Julia McClure, to replace one DAG and appointed McClure "special deputy attorney general to represent the State." Id. at 526. The defendant objected, contending the AG had "no authority" without the court's permission to appoint someone as co-counsel who was a "direct subordinate" of the trial judge and current prosecutor. Ibid. The PCR judge granted the defendant's motion and entered an order barring McClure and all other attorneys in the prosecutor's office from representing the State. Id. at 527. The Court granted the State's motion for leave to appeal. Id. at 528.

Before the case reached the Court, Prosecutor Berman resigned, returned to the bench and a new county prosecutor was appointed. Id. at 528. The Court concluded Berman's "change in position . . . rendered moot any conflict that might have arisen because of [his] prior status as prosecutor." Ibid. Nevertheless, the Court considered "whether any disabling conflicts exist notwithstanding that Berman is no longer prosecutor." Ibid. The Court began by "reaffirming [its] belief that '[t]he heightened responsibilities of prosecutors include faithful adherence to all . . . protections accorded defendants[.]'" Id. at 529 (quoting State v. Carreker, 172 N.J. 100, 115 (2002) (second alteration in original)).

However, it noted that "evaluation of an actual or apparent conflict, or of an appearance of impropriety, 'does not take place "in a vacuum," but is, instead, highly fact specific.' In that respect, the Court's attention 'is directed to "something more than a fanciful possibility."'" Ibid. (quoting In re Opinion 653, 132 N.J. 124, 132 (1993)). In concluding that "the bare allegation of prosecutorial misconduct is insufficient to disqualify McClure and all other assistant prosecutors from representing the State," id. at 529, the Court further explained:

> At bottom, defendant seeks to disqualify a whole agency by asking us to presume that neither McClure nor any person working under her is capable of independently evaluating his petition. In view of Berman's change in position, the high-level ranking of McClure within the prosecutor's office, and the lack of any suggestion of misconduct on her part, we find no compelling rationale to require defendant's requested disposition.
>
> [Id. at 532.]

The Harvey Court cited to our earlier opinion in State v. Irizarry, 271 N.J. Super. 577 (App. Div. 1994). There, the defendant agreed to testify with a grant of immunity from the State against his co-defendant in a capital murder case. Id. at 581–82. The co-defendant was convicted, and subsequent plea negotiations between the defendant and prosecutor's office broke down. Id. at

12

582. The defendant moved to disqualify the entire prosecutor's office, alleging it was using his immunized testimony "to prepare its trial strategy and in its plea bargain negotiations." Ibid.

The defendant argued that the newly assigned trial prosecutor could not be effectively walled off from the supervising prosecutors, all of whom were directly involved in the prior negotiations and would have access to the defendant's immunized testimony. Id. at 582–83. He also argued that a conflict of interest existed because the prosecutor who tried the co-defendant would be a critical defense witness in any penalty phase to establish the defendant's cooperation. Id. at 583. The trial judge rejected the defendant's argument regarding the inability to keep the new prosecutor from accessing the defendant's immunized testimony, but he agreed there was a conflict of interest disqualifying the prosecutor's office from now prosecuting the defendant if one of its members were to be called as a defense witness. Id. at 584. We granted leave to appeal and reversed.

In addressing the possible improper use of the defendant's immunized testimony, "[w]e . . . found no case that stands for the proposition that an entire prosecutor's office should be disqualified because some members of the office are familiar with the immunized testimony of a defendant." Id. at 591. Instead

13

the consensus appears to be that it is not the court's place to dictate who should prosecute the case before a Kastigar[3] hearing is conducted. If the State believes that the same prosecutor should handle the case because all of the evidence was derived from independent sources, then it should be allowed to make that decision. The Kastigar hearing will determine whether the evidence to be presented was truly independent of the immunized testimony.

[Ibid.]

We then turned to the conflict issue, observing that "whether an entire prosecutor's office must be disqualified from a capital case because certain members of that office may be called by the defendant to testify at the penalty phase of the proceedings, is one of first impression." Id. at 593. We concluded there was no appearance of impropriety, citing numerous cases from other jurisdictions refusing to disqualify an entire prosecutor's office because one of its members would be called as a defense witness. Id. at 600–01.

The Court in Harvey also cited with approval another capital case, State v. Marshall, 123 N.J. 1 (1991). There, the Court granted defendant's post-

---

[3] In United States v. Kastigar, the Supreme Court held that when the government bestows use and derivative use immunity on a defendant in return for his compelled testimony, the government has an "affirmative duty to prove that the evidence it proposes to use [in prosecuting that defendant] is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. 441, 460 (1972).

conviction motion for a hearing to determine whether the Ocean County Prosecutor's Office (OCPO) committed a Brady[4] violation by withholding exculpatory evidence in discovery prior to trial. Id. at 171–72. The defendant then moved to disqualify the OCPO and order the AG to represent the State at the hearing. Id. at 176. The defendant claimed that "the interests of justice would be compromised by the [OCPO's] interest in vindicating its management of the discovery file." Ibid.

The Court cited to the AG's broad statutory powers to supervise county prosecutors and supersede in a variety of circumstances, including "whenever [in] the opinion of the [AG] the interests of the State will be furthered by doing so." Id. at 177 (quoting N.J.S.A. 52:17B-107(a)). The Court noted that no one asked for the AG to intervene, and the AG indicated a preference that the OCPO handle the hearing. The Court chose to "not disturb that decision, particularly in light of its separation-of-powers implications." Ibid.

We conclude that defendant's request to disqualify the entire SCPO because one of its assistant prosecutors, admittedly not involved in the investigation and prosecution of defendant, is the brother of the victim of the crime finds no support in our caselaw. The assertion also seeks relief that treads

---

[4] Brady v. Maryland, 373 U.S. 83 (1963).

dangerously upon the thin ice separating our judicial function from that of the Executive Branch, including the express powers our Constitution and the Legislature granted to the AG and county prosecutors. See N.J. Const., Art. VII, sec. II, para. 1 ("County prosecutors shall be nominated and appointed by the Governor with the advice and consent of the Senate."); N.J.S.A. 2A:158-4 ("The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors.").

We therefore affirm the order denying defendant's motion to disqualify the SCPO.

## II.

Rule 3:14-1 governs venue in the Criminal Part and states: "[a]n offense shall be prosecuted in the county in which it was committed." R. 3:14-1. This rule lists nine exceptions, one of which is: "If . . . an offense is committed in several counties prosecution may be had in any of such counties." R. 3:14-1(a). Transfer of venue is mandated "if the court finds that a fair and impartial trial cannot otherwise be had." R. 3:14-2.

Defendant argues that transfer of venue was proper here to prevent the appearance of impropriety because the victim's brother was an assistant prosecutor in the county and because the most serious crime charged in the

A-2240-20

indictment, arson, occurred in Essex, not Somerset, county. We disagree and affirm.

Whether to grant a motion to transfer venue rests within the trial court's sound discretion. State v. Nelson, 173 N.J. 417, 476–77 (2002). Only when a defendant demonstrates that a fair trial cannot otherwise be had in a particular venue do the rules require a trial court to order a change of venue or empanel a foreign jury. Simply put, nothing in this record demonstrates that defendant cannot receive a fair trial in the Somerset vicinage. Defendant acknowledges that Anthony has been isolated from the prosecution since its inception, and, as already noted, we see no reason why a jury would necessarily know that the victims were related to an assistant prosecutor in the SCPO.

Defendant has not alleged that a judge in the Somerset vicinage would somehow be tainted by "an appearance of impropriety" because the victims are related to an assistant prosecutor in the SCPO. We note, however, that the Court has granted such relief only in extraordinary circumstances. See, e.g., State v. Dalal, 221 N.J. 601, 610 (2015) (where the defendant was indicted for terroristic threats against two judges in the vicinage, and the Court ordered either a transfer of venue or that a judge from another vicinage try the case).

Defendant's second argument in support of transferring venue is equally unavailing. There is no authority supporting the proposition that venue should lay in the county where the most serious crime occurs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2240-20