213 N.J. Super. 109 (1986)
516 A.2d 634
CULLEN S. MCVOY AND PATTERSON SMITH, PLAINTIFFS-APPELLANTS,
v.
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MONTCLAIR AND ST. LUKE'S EPISCOPAL CHURCH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1986.
Decided October 16, 1986.
*110 Before Judges BRODY, LONG and D'ANNUNZIO.
Cullen S. McVoy, appellant, argued the cause pro se.
Patterson Smith, appellant, appeared pro se.
Robert M. LePore argued the cause for respondent Board of Adjustment of the Township of Montclair (O'Donnell, Kennedy, Vespole & Piechta, attorneys; John C. Kennedy, of counsel; Robert M. LePore, on the brief).
Grant M. Gille argued the cause for respondent St. Luke's Episcopal Church (Ferguson, Young, Gille & Romaine, attorneys; Grant M. Gille, of counsel; John P. Gillespie, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
*111 This is an action in lieu of prerogative writs in which the Law Division sustained a use variance granted to defendant St. Luke's Episcopal Church (the Church) by defendant Board of Adjustment of the Township of Montclair (the Board). The variance permits the Church to use its rectory as a boarding house for seven to nine senior citizens, contrary to the uses permitted in the R-1 One-Family Residence Zone where it is located. The variance also permits the Church to provide only five off-street parking spaces instead of the eight required by ordinance for the proposed use.
Plaintiffs and numerous other residents who attended the Board hearings objected to the variance on the grounds that there is no pressing need for unsubsidized senior citizen housing in Montclair, and that the new use would presage the demise of one-family homes in the neighborhood and create unsafe traffic conditions. Some objectors expressed resentment because the Church had failed to advise and consult with its neighbors until it was required by law to give them notice in order to obtain the variance.
We reverse because plaintiffs' consent to the participation in these proceedings of two Board members who were also members of the Church did not constitute an effective waiver of the prohibited conflict between the interests of the Board and the interests of the Church in this matter.
N.J.S.A. 40:55D-69 provides in part:
No member of the board of adjustment shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest.
The same prohibition applies to members of a planning board. N.J.S.A. 40:55D-23b. We held in Zell v. Borough of Roseland, 42 N.J. Super. 75, 81-82 (App.Div. 1956), that the prohibition required disqualification of a planning board member who was a member of a church that had applied for a zone change that would have permitted the church parsonage to be replaced with a bank.
*112 Defendants argue that unlike the use change in Zell, the change here would produce senior citizen housing, a use that allegedly satisfies an important public need in Montclair. From that distinction, defendants conclude that the interests of the Church and the Board coincide and are therefore not in conflict. The argument overlooks the Board's further interest, not shared by the Church, that the proposed use "will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. See Sokolinski v. Woodbridge Tp. Municipal Council, 192 N.J. Super. 101, 104 (App.Div. 1983) (members of board of adjustment employed by local school board must disqualify themselves where school board is applicant for a variance even though both boards share some public interests).
The trial judge ruled that the conflict did not require disqualification because the two Board members had disclosed their membership in the Church at the beginning of the first of two nights of hearings and plaintiffs, when asked by the acting chairman,[1] had said that they did not object. The judge relied on the following dicta in Marlboro Manor, Inc. v. Montclair Tp., 187 N.J. Super. 359, 362 (App.Div. 1982):
A personal interest or relationship that has reasonable prospect of influence upon the decisional process should, at the very least, be disclosed. Such disclosure secures to the applicant the right, prior to the exercise of the discretion vested in a council member, to timely challenge the composition of the hearing body.
The judge concluded from that language that when there has been disclosure of a conflict, an express waiver of a timely challenge barred a later challenge on appeal. The judge considered it unfair for plaintiffs to "sit back and see how it comes out and then ... try to upset everything because the outcome is not as you hoped it would be."
*113 In Marlboro the municipal council unanimously denied an application for a place-to-place transfer of a liquor license. Two council members had failed to disclose that they were members of a church whose pastor appeared at the hearing and spoke against the transfer as inimical to the interests and activities of the church. The pastor had also expressed his opposition in a letter addressed to the municipal clerk, copies of which he had sent only to those two council members. The applicant learned of the council members' membership in the church after it had appealed to this court. We nullified the proceedings, holding that "rectitude compelled disclosure and the public interest required disqualification." Id. at 363.
The language relied upon by the trial judge means only that disclosure is necessary to be able to judge "whether a particular interest is sufficient to disqualify" or is too "remote and speculative." Van Italie v. Franklin Lakes, 28 N.J. 258, 268-269 (1958). It does not mean that consent relieves a public official of the duty to disqualify himself where the conflict is immediate and real.
Granting a variance is the exercise of quasi-judicial governmental authority. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 282 (1965). The canons of the Code of Judicial Conduct[2] are therefore a relevant guide to whether consent in these circumstances would be a legally effective waiver. Canon 3C(1) provides in part, "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned...." Canon 3D provides,
A judge disqualified by the terms of this Canon may not avoid disqualification by disclosing on the record his interest and securing the consent of the parties.
The commentary to that canon explains,
This procedure is designed to avoid the chance that a party or lawyer will feel coerced into consent.
*114 Canon 3D was invoked in Matter of Yaccarino, 101 N.J. 342, 392 (1985), where the Court said that "avoidance [by a judge] of such a conflict and the necessity for disqualification are absolute."
It is also relevant to consider that under the Rules of Professional Conduct an ethical requirement that an attorney disqualify himself may be waived by the affected client "except where prohibited by law or regulation, such as the prohibition against a public entity waiving an attorney conflict of interest." RPC 1.10(e). The Supreme Court has stated the rule more broadly:
Where the public interest is involved, [an attorney] may not represent conflicting interests even with consent of all concerned. [Ahto v. Weaver, 39 N.J. 418, 431 (1963)]
We do not draw a direct analogy here between a lawyer advising an agency exercising quasi-judicial authority and a member of the agency, but it is fair to say that if the attorney cannot through consent avoid the consequences of having a private conflict with the public interest neither should a member of the agency who, unlike the attorney, actually exercises quasi-judicial authority.
The trial judge began his oral opinion regarding the merits by emphasizing that it "takes a great deal to overcome ... the deference given to the [Board's] decision." Underscoring that theme, both defendants highlighted their briefs with the following admonition from Mahler v. Borough of Fair Lawn, 94 N.J. Super. 173, 185-186 (App.Div. 1967), aff'd o.b. 55 N.J. 1 (1969):
Our cases recognize that there is an area of special discretion reposed in the local agencies within which, in many situations, either the grant or denial of a (d) variance would be judicially sustained.
When a member of a local agency exercises that broad discretion under the cloud of a conflicting personal interest, there is a greater public good to be served than holding an applicant or objector to his waiver. See, e.g., Township Committee of Hazlet Township v. Morales, 119 N.J. Super. 29, 33 (Law Div. 1972) (public officer is expected to serve the public with the highest fidelity; the law will not tolerate any mingling of *115 self-interest). Someone must lose whenever judicial or quasi-judicial authority is exercised. The greater the range of discretion in exercising that authority, the greater must be the concern that the person exercising it be free of conflicting personal interests that may affect the result or reasonably lead the losing party to believe that that is why he lost.
Plaintiffs assert that they felt pressured into giving their consent because a large number of residents, eager to be heard, had assembled for the hearing and if the two Board members did not participate, the hearing would have had to be postponed to obtain a quorum. Plaintiffs claim that they also feared the adverse effect that their refusal to consent would have had on the other members of the Board. Plaintiffs also claim that apart from their disappointment with the outcome, they were disappointed with the treatment they received during the hearings. They claim that the Board curtailed their efforts to learn relevant details concerning the proposed use, that the Board did not permit them to introduce pertinent evidence, that one of the two Church members on the Board was rude and quarrelsome with them and other objectors, that the same member indicated that he had decided to vote for the variance before he had heard all the evidence, that at a private meeting the Board changed its rules to permit the second session to continue past 11:00 p.m. until the hearing concluded, and that because of the new rule the late hour forced many objectors to go home without being heard. The second session concluded at 2:00 a.m.
We do not pass on the merits of these assertions except to observe that from our review of the record they are not fanciful. On the other hand, a different reading of the record, more sympathetic to the Board, is at least as reasonable. Board members, mindful of other applications that were delayed by these hearings, were attempting to expedite the presentation of evidence by discouraging plaintiffs and other objectors from extending what they considered to be irrelevant or redundant inquiries and remarks.
*116 Plaintiffs' reading of the record is undoubtedly colored by their belief that they are victims of an impermissible conflict of interests. Where, as here, there was such a conflict, waiver of the conflict could not preclude an attack on the exercise of governmental authority that was actually affected by bias. However, to determine the presence and effect of bias would require putting an objector to difficult proofs of subjective matters. For that reason our courts have eschewed such an inquiry when a conflict has been shown. Griggs v. Princeton, 33 N.J. 207, 219 (1960) ("it is the existence of such interests which is decisive, not whether they were actually influential").
Concern for the impartial exercise of quasi-judicial authority, in appearance as well in fact, requires that where a member of a board of adjustment must disqualify himself in a matter because of a conflict of interests, the disqualification is absolute and cannot be waived.
Reversed.
NOTES
[1] The chairman of the Board had disqualified himself before the hearings because he was a member of the Church.
[2] The Code of Judicial Conduct and the Rules of Professional Conduct govern the conduct of judges and members of the bar of New Jersey. R. 1:14.