845 A.2d 186 (2004)
368 N.J. Super. 46
Kathleen D. SHAPIRO, a Member of the Township Council of the Township of Moorestown, Plaintiff,
v.
Michael MERTZ, John Gibson and the Ethics Board of the Township of Moorestown, Defendants-Respondents.
Harvey Howard and Larry Anastasi, Plaintiffs-Respondents,
v.
Kathleen Shapiro and Andrew Shapiro, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 2004.
Decided April 8, 2004.
*188 Christopher Norman argued the cause for appellants (Norman, Kingsbury & Norman, attorneys; Mr. Norman, of counsel on the brief).
Christopher P. Leise, Cherry Hill, argued the cause for respondents Harvey Howard and Larry Anastasi (White & Williams, attorneys; Mr. Leise, of counsel and on the brief and Andrew J. Podolski, on the brief).
William John Kearns, Jr., Willingboro, argued the cause for respondent Ethical Standards Board of the Township of Moorestown (Kearns, Vassallo & Kearns, attorneys; Mr. Kearns, of counsel and on the brief).
Dennis P. Talty, Philadelphia, PA, argued the cause for respondent Township of Moorestown.
Before Judges KING, LINTNER and LISA.
*187 The opinion of the court was delivered by
KING, P.J.A.D.
This case concerns the legality of a governing body member's vote for her husband's appointment to the municipal planning board. With her vote, the governing body approved of her husband's appointment by a 3-2 margin. We conclude that the council member's vote for her spouse's appointment was a violation of the Local Government Ethics Law, N.J.S.A. 40A:9-22.5d (Ethics Law). We affirm the ruling of Judge Sweeney which set aside the appointment because the council member voted for her husband.

I
This is an appeal by Kathleen Shapiro, a member of Moorestown's Township Council and her husband, Andrew Shapiro, from an order of the Law Division in Burlington County invalidating her vote for his appointment to the Planning Board. Andrew has served four terms on the Planning Board, spanning fifteen years, including five years as chair. His most recent term expired on December 31, 2003. The Planning Board elects the chair from among Class IV citizen members. N.J.S.A. 40:55D-24; N.J.S.A. 40:55D-23(a). Andrew's wife of six months, Kathleen, was one of five elected members of the Township Council. She had served on Council since January 2001.
Soon after her marriage in September 2002, Kathleen filed an action in the Law Division seeking a declaratory judgment that no conflict of interest existed because of their positions in local government. The suit was dismissed without prejudice as non-justiciable.
On January 12, 2004 the Council held a reorganization meeting where appointments to the Planning Board, including Andrew's, were considered. The Township solicitor, Dennis P. Talty, Esquire, advised Kathleen at the meeting that her participation in the vote for Andrew's reappointment would contravene the Ethics Law, N.J.S.A. 40:9-22.5d and the cognate Section 9-5 of the identical Municipal Ethics Code. Kathleen cast the deciding vote and the five-member Council reappointed Andrew to the Planning Board by a 3-2 vote.
On January 13 respondents Michael Mertz and John Gibson each filed complaints with the municipal Ethics Board asserting that Kathleen's vote violated Section 9-5 of the Moorestown Municipal Code of Ethics. On January 14 Kathleen filed this action against Mertz, Gibson and the Ethics Board. She sought a judicial determination on whether her vote for her husband violated the local ethics ordinance or N.J.S.A. 40A:9-22.5. She also sought *189 injunctive relief against any action by the Ethics Board.
Assignment Judge Sweeney promptly heard oral argument on Kathleen's order to show cause and added the Township as a party. On January 16 Moorestown residents Harvey Howard and Larry Anastasi filed a separate complaint in the Chancery Division challenging Kathleen's vote and sought her removal from Council.
Judge Sweeney issued a written opinion on January 20. He consolidated the Law Division and Chancery Division actions and ruled that Kathleen's vote violated N.J.S.A. 40A:9-22.5d. His decision and order: (1) invalidated Kathleen's vote; (2) vacated the appointment of Andrew to the Planning Board; (3) denied the removal of Kathleen from Council; and (4) ruled that the Ethics Board retained jurisdiction over the complaint filed with it.
The Shapiros promptly filed an emergency application with this court requesting a stay of Judge Sweeney's order and an accelerated hearing and disposition of the appeal. We heard argument on an emergency basis on January 23 and issued an order granting the motion for acceleration. We denied a stay of Judge Sweeney's order pending this accelerated appeal. We also memorialized our agreement with the parties that the Township would not fill the vacancy on the Planning Board created by the judge's order and the Ethics Board agreed not to act on the complaint, pending our decision on this matter.

II
The issue is whether Kathleen violated the Ethics Law when she cast the deciding vote for the reappointment of her husband, Andrew, to the Planning Board. The Township and several of its citizens argue that Kathleen's vote created a conflict of interest, and Andrew's reappointment should be vacated. The Shapiros contend that Andrew is well qualified on the merits because of his experience and dedicated service. Judge Sweeney vacated Andrew's reappointment because, due to the marital relationship, "the public perceives [the vote] to be a problem of some dimension," thereby creating a conflict of interest and violating the Ethics Law.
The relevant statute provides in pertinent part:
Local government officers or employees under the jurisdiction of the Local Finance Board shall comply with the following provisions:
....
d. No local government officer or employee shall act in his official capacity in any matter where he, a member of his immediate family, or a business organization in which he has an interest, has a direct or indirect financial or personal involvement that might reasonably be expected to impair his objectivity or independence of judgment.
[N.J.S.A. 40A:9-22.5d (emphasis added).].
A "member of immediate family" is defined as "the spouse or dependent child of a local government officer or employee residing in the same household." N.J.S.A. 40A:9-22.3i. A "local government officer" is "any person whether compensated or not, whether part-time or full-time: (1) elected to any office of a local government agency...." N.J.S.A. 40A:9-22.3g. Under these definitions, Kathleen clearly falls within the scope of the Ethics Law.
The Ethics Law was enacted in 1991, L. 1991, c. 29, based upon the Legislature's findings that:
a. Public office and employment are a public trust;

*190 b. The vitality and stability of representative democracy depend upon the public's confidence in the integrity of its elected and appointed representatives; [and]
c. Whenever the public perceives a conflict between the private interests and the public duties of a government officer or employee, that confidence is imperiled.
[N.J.S.A. 40A:9-22.2 (emphasis added).]
N.J.S.A. 40A:9-22.5 is a statutory code of ethics further "refin[ing] the definition of a conflict of interest," established by the courts. Wyzykowski v. Rizas, 132 N.J. 509, 529, 626 A.2d 406 (1993). When determining whether a conflict exists, we must look to the Ethics Law as well as to the common law and, when applicable, the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -129 (MLUL). See Cox, New Jersey Zoning and Land Use Administration, § 3-1.2 at 42 (2004).
Generally, "[a] public official is disqualified from participating in judicial or quasi-judicial proceedings in which the official has a conflicting interest that may interfere with the impartial performance of his duties as a member of the public body." Wyzykowski, 132 N.J. at 523, 626 A.2d 406 (quoting Scotch Plains-Fanwood Bd. of Educ. v. Syvertsen, 251 N.J.Super. 566, 568, 598 A.2d 1232 (App.Div. 1991)). "This is essential if the public is to have confidence and trust in the representatives who are required to decide public issues coming before them." Barrett v. Union Township Comm., 230 N.J.Super. 195, 200, 553 A.2d 62 (App.Div.1989). The Supreme Court has recognized four types of situations that require disqualification:
(1) "Direct pecuniary interests," when an official votes a matter benefiting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance...; and (4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
[Wyzykowski, 132 N.J. at 525-26, 626 A.2d 406 (quoting Michael A. Pane, Conflict of Interest: Sometimes a Confusing Maze, Part II, New Jersey Municipalities, March 1980, at 8, 9).]
Determination of whether a conflict of interest exists must be done on a case-by-case, fact-sensitive basis. Id. at 523, 626 A.2d 406. "The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." Van Itallie v. Franklin Lakes, 28 N.J. 258, 268, 146 A.2d 111 (1958). Actual proof of dishonesty need not be shown. Wyzykowski, 132 N.J. at 524, 626 A.2d 406 (citing Aldom v. Borough of Roseland, 42 N.J.Super. 495, 503, 127 A.2d 190 (App. Div. 1956)). The key is whether there is a "potential for conflict." Ibid. (citing Griggs v. Borough of Princeton, 33 N.J. 207, 219, 162 A.2d 862 (1960)). "A conflicting interest arises when the public official has an interest not shared in common with the other members of the public." Ibid. (citing Griggs, 33 N.J. at 220-21, 162 A.2d 862) Alternatively, "[t]here cannot be a conflict of interest where there do not exist, realistically, contradictory desires tugging the official in opposite directions." Ibid. (quoting LaRue v. Twp. of East *191 Brunswick, 68 N.J.Super. 435, 448, 172 A.2d 691 (App.Div. 1961)).
The Ethics Law expanded the definition of a conflict of interest which had been established through common law and codified by the MLUL, N.J.S.A. 40:55D-23b. Cox, § 3-1.2(e) at 46-47. Instead of using the words "any personal or financial interest," as used in the MLUL, the Legislature instead chose to utilize the words "financial or personal involvement." N.J.S.A. 40A:9-22.5d (emphasis added). Cox concludes that the word "involvement" extends the Ethics Law's reach beyond that of the MLUL and would appear to cover "such intangible relationships as friendship or being an alumnus of the same school of the applicant." Ibid. We do not need to determine the outer boundary of the definition of "involvement" in this case. However, here we confront the clearest and closest familial relationship, covered by the more narrow "interest" standard of the MLUL and common law.
Analysis of whether a conflict indeed is present must be performed in the context of the particular case. A familial relationship does not always create a per se conflict. The specific interests of the parties involved must be evaluated before a conflict is declared. For example, a planning board member was not burdened by a conflict when he voted for approval of the construction of a parking garage at a hospital where his wife occasionally worked. Petrick v. Planning Bd. of Jersey City, 287 N.J.Super. 325, 671 A.2d 140 (App.Div.1996); see also Lincoln Heights Ass'n v. Township of Cranford Planning Bd., 314 N.J.Super. 366, 714 A.2d 995 (Law Div.) aff'd o.b. 321 N.J.Super. 355, 729 A.2d 50 (App.Div.), certif. denied, 162 N.J. 131, 741 A.2d 99 (1999) (finding no evidence a planning board member personally benefited from a site plan approval of the construction of a grocery store near where the member's parents lived). In Petrick, we found no evidence that the parking garage would enhance the wife's employment situation. 287 N.J.Super. at 332, 671 A.2d 140. The relationship between the board member's wife with the hospital was deemed "too remote and too attenuated to disqualify [the board member] from voting...." Ibid.
However, when a family member's vote results in another family member obtaining a position in a government agency, as in the situation before us, a conflict is usually present. For example, in an earlier, pre-Ethics Law case, Judge Schoch invalidated a recently-defeated, "lame duck" school board member's vote for her husband to fill a vacant seat on the school board. Jones v. East Windsor Reg'l Bd. of Educ., 143 N.J.Super. 182, 193-95, 362 A.2d 1228 (Law Div.1976). The judge found that the wife was not "evincing and demonstrating her personal interest in the welfare of the community." A finding of the wife's economic or financial gain was not required. Id. at 193, 362 A.2d 1228. Judge Schoch in Jones applied this language by Judge Goldmann in S & L Associates, Inc. v. Washington Township, 61 N.J.Super. 312, 329, 160 A.2d 635 (App. Div.), aff'd in part, rev'd in part on other grounds, 35 N.J. 224, 172 A.2d 657 (1961):
[T]he interest which disqualifies need not be a direct, pecuniary one: it may be indirect. Basically, the question whether the public official, by reason of a personal interest in the matter, is placed in a situation of temptation to serve his own purposes, to the prejudice of those for whom the law authorizes him to act. The validity of his action does not rest upon proof of fraud, dishonesty, loss to the municipality, or whether he was in fact influenced by his personal interest.
In a case where the conflict perhaps was not so obvious, a planning board member *192 voted on a site plan application for the construction of a supermarket just fifty feet from commercial property owned by his mother. Care of Tenafly, Inc. v. Tenafly Zoning Bd. of Adjustment, 307 N.J.Super. 362, 704 A.2d 1032 (App.Div. 1998). When the board member voted in favor of the application, several competitors and citizens voiced their protest. We found a conflict of interest because the board member and his mother had a sufficient financial interest in the construction of the new supermarket. We based our decision on the potential income generated for the mother's property by an adjacent anchor store.
We focus in the case before us not on any actual or potential personal or other interest which Kathleen might possibly have. We focus on the public's perception of an undesirable conflict. Marital status is surely not a remote or trivial interest. Here the public could readily perceive that Kathleen had a personal interest in the reappointment of her husband to a prestigious and potentially very influential position.
Whether Kathleen voted for Andrew "on the merits" is not the issue. As Judge Michels said in Barrett, 230 N.J.Super. at 204, 553 A.2d 62, "[t]he fact that this was not a direct personal or financial interest is not dispositive of the issue. The question is whether there existed an interest creating a potential conflict and not whether [the public official] yielded to the temptation...." Ibid.
Here, Andrew might well have been the ideal planning board candidate in the eyes of Kathleen and perhaps many others in Moorestown. However, in the eyes of the public, the personal involvement between Kathleen and Andrew might reasonably be expected to impair her objectivity or independence of judgment. Many Moorestown residents spoke out or wrote to express their favorable opinion regarding Andrew's qualifications for the office. However, the single dominant fact is that their marriage could lead members of the public to believe that their relationship strongly influenced Kathleen's vote. Kathleen cast the decisive, tie-breaking vote for Andrew's reappointment, so the matter does not resound with political consensus. We find Kathleen's disqualification absolute, no matter if the vote were 5-0.
We conclude that marriage is a direct personal involvement which might be reasonably expected to impair objectivity or independence of judgment within the meaning of N.J.S.A. 40A:9-22.5d. We affirm Judge Sweeney's decision setting aside the appointment of Andrew Shapiro to the Planning Board.
Affirmed.