925 A.2d 741 (2007)
394 N.J. Super. 193
Joseph and Pamela HUGHES, Plaintiffs-Appellants, and
Dina and Doyle Ciaglia, Michael Pagones, Rosemary Staba, James and Patricia Delahanty, Irene Tsakiris, Jason and Stacie Harkavy, Jerome and Barbara Berkowitz, Kathryn and Tony Sgro, Dot Schulze, Thomas Cameron, Rachel and Russell Creighton, Michael and Michelle Maroney, Kathryn Olbeter and Ted Entwhistle, John and Catherine O'Brien, Mae Fisher, Thomas Cameron, Warren and Andrea Babson, James Flanagan, Kathryn and Tony Coppola, Dominick and Elizabeth Gallo, Kenneth and Linda Wasser, and Matthew and Julienne Goldfine, Plaintiffs,
v.
MONMOUTH UNIVERSITY and West Long Branch Board of Adjustment, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 2007.
Decided June 27, 2007.
*742 James M. Siciliano, Long Branch, argued the cause for appellants (Mr. Siciliano, attorney; Joseph G. Hughes, on the brief).
Thomas H. Klein argued the cause for respondent West Long Branch Zoning Board of Adjustment (Smith & Klein, attorneys; Mr. Klein, on the brief).
Dean A. Gaver, Woodbridge, argued the cause for respondent Monmouth University (Greenbaum, Rowe, Smith & Davis, attorneys; Mr. Gaver, of counsel and on the brief; Steven Firkser and Michelle M. Sekowski, on the brief).
Before Judges LEFELT, PARRILLO and SAPP-PETERSON.
PER CURIAM.
Monmouth University applied for site plan approval and several variances to the Borough of West Long Branch Board of Adjustment to construct a 48,800 square foot, three-story 196-bed student dormitory with parking for 126 vehicles, six tennis *743 courts and associated parking lot, public restroom, and storm water detention basin. Plaintiffs Joseph and Pamela Hughes, neighboring residential property owners, objected to the application as a non-residential use of property zoned for low-density residential uses. After hearing extensive testimony from both sides, the Board voted five to one to approve the application, granting thirteen distinct use and bulk variances. Thereafter, plaintiffs filed a complaint in lieu of prerogative writs with the Law Division, claiming that several Board members should have been disqualified because of financial or personal involvement with the University. Plaintiffs also claimed the Board's grant of the variances was improper and a usurpation of the Borough's zoning power. Judge Lehrer affirmed the Board's decisions, and plaintiffs appealed to this court.[1] We affirm substantially for the reasons expressed by Judge Lehrer in his decision, Hughes, et al., v. Monmouth Univ. and W. Long Branch Bd. of Adjustment, 394 N.J.Super. 207, 925 A.2d 750 (Law Div. 2006), as supplemented by the following.
The Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-69, provides in pertinent part that "no member of the board of adjustment shall be permitted to act on any matter in which he has, either directly or indirectly, any personal or financial interest." Ibid. (emphasis added). This conflict-of-interest provision codified the existing common law, Care of Tenafly v. Borough of Tenafly, 307 N.J.Super. 362, 369, 704 A.2d 1032 (App.Div.1998), and has been interpreted as precluding action by board members in four situations:
(1) "Direct pecuniary interests," when an official votes on a matter benefiting the official's own property or affording a direct financial gain; (2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member; (3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and (4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.
[Wyzykowski v. Rizas, 132 N.J. 509, 524, 626 A.2d 406 (1993).]
In 1996, the Local Government Ethics Law, N.J.S.A. 40A:9-22.1 to -22.5, was enacted, barring a public official, such as a member of a board of adjustment, see Haggerty v. Red Bank Borough Zoning Bd. of Adjustment, 385 N.J.Super. 501, 514, 897 A.2d 1094 (App.Div.2006), from acting in any matter in which he or she "has a direct or indirect financial or personal involvement that might reasonably be expected to impair his[/her] objectivity or independence of judgment." N.J.S.A. 40A:9-22.5(d)(emphasis added). The Ethics Law also extends the prohibition to immediate family members or business associates. Ibid.
As we indicated in Shapiro v. Mertz, 368 N.J.Super. 46, 53, 845 A.2d 186 (App.Div. *744 2004), "[t]he Ethics Law expanded the definition of a conflict of interest which had been established through common law and codified by the MLUL, N.J.S.A. 40:55D-23b." Indeed, one of the leading land-use scholars believes that "the Ethics Law broadens the areas of disqualification at least by its extension of reach to the indirect involvements of family members and business associates." William M. Cox, Zoning and Land Use Administration, 3-1.2(d) at 50 (2007). According to Cox, "it is unclear whether the use of the word `involvement' instead of `interest' bears significance," but "intangible relations such as a friendship or being an alumnus of the same school as the applicant could be held to be grounds for disqualification depending upon the circumstances." Ibid. Nevertheless, whether considering the MLUL's definition or the broader Ethics Law, we still agree with Judge Lehrer's determination that none of the involvements and interests highlighted by plaintiff, under the circumstances presented herein, constituted disqualifying conflicts.
It is clear that an alumnus of a University applicant has an "involvement" with the school. But here, where the board members obtained their degrees many years ago, were not active alumni members, and did not substantially contribute to the University or otherwise evidence any special attachment to the school, no reasonable person could conclude that such involvement would have tempted them "to depart from [their] sworn public duty." Care of Tenafly, supra, 307 N.J.Super. at 369-70, 704 A.2d 1032; Barrett v. Union Twp. Comm., 230 N.J.Super. 195, 201, 553 A.2d 62 (App.Div.1989).
We also note that none of the board members or their family members is a current student at the University. Compare McVoy v. Bd. of Adjustment of Twp. of Montclair, 213 N.J.Super. 109, 111-112, 516 A.2d 634 (App.Div.1986) (finding current membership in a religious congregation a conflict where the congregation was the applicant) and Zell v. Borough of Roseland, 42 N.J.Super. 75, 81-82, 125 A.2d 890 (App.Div.1956) (finding disqualification because of membership in a church which had applied for a zone change); with Sugarman v. Twp. of Teaneck, 272 N.J.Super. 162, 169, 639 A.2d 402 (App.Div.), certif. denied, 137 N.J. 310, 645 A.2d 139 (1994) (finding prior membership in congregation too remote an interest to require disqualification from synagogue's application).
It is true that one of the board member's children, who had attended the University in the past, received a $4,500 tuition credit from the school. However, the credit was awarded because of the student's academic record and was available to all similarly situated students. Consequently, this credit would not have interfered with the members' impartial performance of his duties. Wyzykowski, supra, 132 N.J. at 523, 626 A.2d 406. Similarly, the fact that a board member's child may in the future consider attending the University or that a member's company won a public bid and performed some work for the school over ten years ago, are both much too remote to constitute conflicts. See Van Itallie v. Borough of Franklin Lakes, 28 N.J. 258, 269, 146 A.2d 111 (1958); Sugarman, supra, 272 N.J.Super. at 169, 639 A.2d 402.
Furthermore, the fact that board members participated in various University events, such as concerts, wine tastings, and athletic events, would similarly not be disqualifying. None of these involvements, which were open to the public generally, could "reasonably be expected to impair [the board member's] objectivity or independence of judgment." N.J.S.A. 40A:9-22.5(d).
*745 Plaintiffs further argue that board member Juliano was disqualified from voting and improperly participated in one of the final hearings, thereby rendering the result void in its entirety. See Haggerty supra, 385 N.J.Super. at 517, 897 A.2d 1094; Szoke v. Zoning Bd. of Adjustment, 260 N.J.Super. 341, 343-44, 616 A.2d 942 (App.Div.1992). The final hearings plaintiffs reference, however, dealt with the site plan and occurred well after the variances had been approved. Plaintiffs also complain of Juliano "questioning objector Hughes, especially as related to the tennis court aspect of the plan. In addition, she also questioned the objector's Professional Planner" regarding the placement of the tennis courts.
However, Juliano's relatively minimal participation was not fatal because she was not disqualified "for cause." See DeMaria v. JEB Brook L.L.C., 372 N.J.Super. 138, 148, 855 A.2d 628 (Law Div.2003). Instead, she disqualified herself from voting because she had missed several meetings due to her ill son. Had she read the transcripts from the missed meetings, she could have voted. N.J.S.A. 40:55D-10.2. Under these circumstances, she was not precluded from commenting on those issues for which she was properly prepared.
Finally, plaintiffs claim that when the entire 19.277 acre proposal is considered, and not just the 4.38 acres relating to the tennis courts, the project was clearly an usurpation of the Borough's zoning authority. However, the entire proposal constituted only three percent of the R-22 zone and was hardly a substantial modification of the zone. See Twp. of Dover v. Bd. of Adjustment, 158 N.J.Super. 401, 412-13, 386 A.2d 421 (App.Div.1978) (finding "the size of the tract relative to the size and character of the district in which it is located" one of the relevant factors in determining whether usurpation has occurred). Moreover, unlike Twp. of N. Brunswick v. Zoning Bd.of Adjustment of Twp. of N. Brunswick, 378 N.J.Super., 485, 494, 876 A.2d 320 (App.Div.2005), there was no indication in the record that the Borough clearly disapproved of the proposed use within the zone. In fact, the surrounding area includes numerous other resident dorms and other University structures that are similar in style and size to the proposed plan. Consequently, the variances did not significantly alter the township's zoning plan, and Judge Lehrer correctly found that the variance approvals were not usurpations of the Borough's zoning authority.
Affirmed.
NOTES
[1] The Borough of West Long Branch had brought a separate action challenging only the Board's approval of the tennis courts, associated parking lot, and storm water basin. The Borough claimed that the approval of these uses on one residential block was a usurpation of its zoning authority. The trial court found to the contrary, and the Borough has not appealed.